Argued February 23, decided March 5, 1912.

## KOVACHOFF *v.* ST. JOHNS LUMBER CO.

[121 Pac. 801.]

MASTERS AND SERVANT—ASSUMPTION OF RISK.

1. An employee assumes the ordinary dangers of the employment which he knew and apprehended or could have known by reasonable diligence.

MASTER AND SERVANT—ASSUMPTION OF RISK—HIDDEN DANGERS.

2. An employee does not assume hidden dangers which he could not have ascertained by exercising ordinary care, so that, where an employee could not have known by reasonable diligence that a covering had been removed from gearing which had theretofore been protected, he only assumed the risk incident to the gearing when so protected.

APPEAL AND ERROR—FINDINGS—CONCLUSIVENESS—CONFLICTING EVIDENCE.

3. A jury finding on conflicting evidence cannot be disturbed on appeal.

MASTER AND SERVANT—DUTIES—SAFE PLACE OF WORK.

4. Irrespective of statute, a master must furnish employees a reasonably safe place of work.

MASTER AND SERVANT—MASTER'S DUTY—SAFE APPLIANCES.

5. Irrespective of statute, an employer must furnish safe tools and appliances.

MASTER AND SERVANT—MASTER'S DUTY—DELEGATION.

6. An employer's duty to furnish a reasonably safe place of work and reasonably safe appliances cannot be delegated so as to relieve him of responsibility.

MASTER AND SERVANT—MASTER'S DUTY—CONTINUING DUTY.

7. An employer's duty to furnish a reasonably safe place of work and reasonable safe tools is continuing.

WORDS AND PHRASES—"MAINTAIN."

8. "Maintain" is defined to mean to hold or keep in a particular state or condition, especially in a state of efficiency; to support, sustain, not to suffer to decline.

MASTER AND SERVANT—MASTER'S DUTY—DELEGATION.

9. In removing the covering from live rollers forming a part of a lumber conveyor for the purpose of oiling the machinery, the oiler acted for his employer, so as to make the latter liable for injuries sustained by another employee from the removal of the covering under the factory act, Section 5040, L. O. L., requiring any corporation operating a mill, etc., where machinery is used to provide and maintain reasonable safeguards for all live rollers and machinery which it is practicable to guard, with which the employees are liable to come in contact, and requiring the employer to put a notice upon any unguarded machine until it is guarded.

MASTER AND SERVANT—INJURIES—JURY QUESTION.

10. Whether the temporary stoppage of conveyor machinery while the covering was taken from live rollers for the purpose of oiling them was inconsistent with the ordinary use of the machinery, so as to require the machinery to be stopped until the covering was replaced, *held* a jury question in a mill employee's action for personal injuries.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Nick Kovachoff against the St. Johns Lumber Co., a corporation. The facts are stated below.

The substance of the complaint is that on January 18, 1910, the plaintiff was an employee of the defendant in its sawmill working upon a conveyor of lumber which consists of live rollers operated by beveled gears, which in turn were acted upon by the motive power of the mill; that these gears were so situated as to be dangerous to life and limb of employees working near or about the same unless they were safeguarded at all times by reasonable and proper covering; that at the time and place mentioned the defendant carelessly and negligently failed to maintain any safe guards or coverings over the part of said gears running the live rollers, but permitted the same to remain uncovered, although it was practicable to guard and cover them; and that the plaintiff, while

so in the employ of the defendant in the discharge of his duties as such employee and without knowledge on his part that the gears were uncovered, caught his right hand in them so that it was mangled and lacerated, all to his damage in the sum of $7,500.

The answer admits that the plaintiff was in the employ of the defendant, but denies all the allegations imputing negligence to the defendant, and denies also that the live rollers were left uncovered or unguarded. The defendant interposed four affirmative defenses, viz., assumption of risk, that the injury was caused by the negligence of a fellow servant, that the plaintiff was guilty of contributory negligence, and, lastly, that the defendant had complied with the provisions of the factory act under which this proceeding was instituted.

The reply traverses the affirmative defenses. There was a jury trial resulting in a verdict and judgment in favor of the plaintiff for $3,000, and the defendant appeals.                              AFFIRMED.

For appellant there was a brief over the names of *Messrs. Rauch & Senn,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the names of *Mr. Joseph H. Page* and *Messrs. Coovert & Stapleton,* with oral arguments by *Mr. Page* and *Mr. Elmer E. Coovert.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The facts, as developed by the record in this case, are substantially these: In the defendant's sawmill the lumber, as it comes from the main saw where it is first manufactured from the log, is deposited on what is called a sorting table about 300 feet long by 30 feet wide and about 2 feet high. On this sorting table are chains running parallel with the longest dimension, which carry the lumber to employees stationed along-

side whose duties are to sort the lumber for delivery to various other parts of the mill. At different points along the greater dimension and extended at right angles thereto are several systems of live rollers by which the lumber is thus distributed. The plaintiff worked near one of these systems of live rollers sorting the lumber. These live rollers are operated by a system of beveled gears set in motion like other machinery of the mill. Ordinarily they were kept protected by boards two inches thick fastened in place in front of the gearing on top of which was another two-inch board which afforded ample protection when it was in place. The plaintiff worked on the night shift of the mill force, and during the night the oiler, whose duty it was to lubricate the machinery of the mill, came there and took off the covering for two sections of about ten feet each and laid it upon the floor. All this time the mill was running and the plaintiff in the course of his duties turned in the direction of the live rollers, when his hand was caught and crushed by the gearing while the cover was thus removed. What is known as the factory act in this State is contained in Chapter 4 of Title 37, L. O. L. °Section 5040, provides that:

"Any person, firm or corporation or association operating a factory, mill or workshop where machinery is used, shall provide and maintain in use * * reasonable safeguards for all * * live rollers * * and machinery of other or similar description which it is practicable to guard and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employees therefrom, and with which the employees of any such factory, mill or workshop, are liable to come in contact while in the performance of their duties. * * If any machine is not safeguarded as provided in this act, the use thereof is prohibited, and a notice to that effect shall be attached thereto by the employer immediately on receiving notice of such defect or lack of safeguard, and such notice

shall not be removed until said defect has been remedied or the machine safeguarded as herein provided.

1. 3, The contention of the defendant on the appeal is based upon the two defenses of assumption of risk by the plaintiff and that the injury was caused by the negligence of the plaintiff's fellow servant. As we understand the law, an employee assumes the ordinary risks and dangers of the employment in which he is engaged, which he knew or apprehended, or by the exercise of reasonable diligence and observation might have known. The assumption does not extend to hidden dangers of which the plaintiff knew nothing and which he could not ascertain by the exercise of reasonable diligence on his part. There is a dispute in the testimony, however, about whether the plaintiff knew that the covering had been removed from the gearing, or whether he might have known it by the exercise of reasonable diligence. The testimony on behalf of the plaintiff tends to show that he was so busily engaged in his employment of removing the lumber from the sorting table that he did not observe that the oiler had removed the covering from the gears, and, under the circumstances, could not have known of its removal in time to avoid his injury. On the other hand, the testimony for the defendant is that the plaintiff assisted the oiler in removing the covering from the gearing and knew that it was unguarded at the moment when his hand was caught in the machinery. So it is that, as far as the knowledge of the plaintiff or his diligence is concerned, the question was for the jury, under the authority of *Palmer* v. *Portland Railway Light & Power Co.*, 56 Or. 262 (108 Pac. 211). The jury having decided this question against the defendant, we cannot disturb the verdict. As attested by the verdict the plaintiff did not have any knowledge of the unguarded conditions of the machinery. Under such circumstances, he only assumed the risk incident to the use of the

machinery when protected by the safeguard in place. But no such situation confronts us here because it is admitted that the safeguard was at least temporarily removed and that the injury occurred while it was not in place.

It remains to consider the defense that the injury was caused by the negligent act of a fellow servant of the plaintiff. In *Mast* v. *Kern,* 34 Or. 247 (54 Pac. 950: 75 Am. St. Rep. 580), it is said that: "If the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank of the servant or employee to whom it is intrusted; but, if it is one pertaining only to the duty of an operative, the employee performing it is a fellow servant with his colaborers, whatever his rank, for whose negligence the master is not liable."

4, 6. Independent of any statute, the master is bound to furnish for his employees a reasonably safe place in which to work, and reasonably safe tools and appliances with which to operate, and this duty is one which he cannot delegate to another so as to escape liability for resulting injury, no matter whether it be a servant or a stranger, or what be the grade or authority of the employee to whom the performance of the duty is committed.

7. Whether delegated or not, this duty is a continuing one on the part of the master, and he is responsible not only for his own acts in that behalf, but also for the acts of the one to whom his duty has been intrusted. In addition to the common-law duty, the factory act, to which reference has been made, imposes a statutory duty upon the master not only to provide, but also to maintain in use, proper safeguards on such a machine as the one now in question. Not only so, by the statute has gone farther and in express terms has said that, if the machine is not safeguarded as provided in the act,

the use thereof is prohibited, and that immediately upon receiving notice of the defect or lack of safeguards a notice shall be attached to the machine by the employer, and it shall not be removed until the machine has been safeguarded as provided by the act.

8. According to Webster, "maintain" means "to hold or keep in any particular state or condition, especially in a state of efficiency or validity; to support, sustain, to keep up, not to suffer to fail or decline."

9. It appears from the testimony that in the performance of his service, as required by the defendant, the oiler was compelled to remove the covering board in order to oil the live rollers. The master, however, cannot thus endow the oiler with the power to suspend the use or maintenance of the safeguard and say in the same breath that the oiler in so doing was the fellow servant of the plaintiff. The statute presents to the master the alternative of keeping the safeguard in place or stopping the machine, for the law says that when the machine is not thus safeguarded its use is forbidden. If he ignores the command of the law, he must take the consequences visited by the statute upon his disobedience. If he chooses to balance the safety of his servant against the efficiency of his plant as a profit maker, he cannot complain if the balance is against him in the general result. The oiler, in removing the safeguard as the nature of his employment required him to do, in order to oil the machinery, stands in the place of the master in the statutory obligation to safeguard the rollers, and it was his duty either to keep the safeguard in place or to suspend the use of the machinery.

10. Even if the use of an unguarded machine of this kind was not expressly prohibited by statute, we could not say as a matter of law that the temporary stoppage of the machinery was not consistent with the ordinary use of the same. Such a question is one

for the jury. We hold therefore, that the oiler in removing the safeguard, even temporarily, whereby the machinery was exposed and caused the injury to the plaintiff, was acting in the place and stead of the master, and was not a fellow servant, and that his negligence, if any, is imputed to his superior, the master, the latter of whom, under the factory act, is responsible to the plaintiff for the resulting injury.

The precedents cited by the defendant are either common-law actions or rest upon a statute entirely different from our own.

It follows that the judgment of the court below must be affirmed.                                        AFFIRMED.