DELLA O'CONNELL. by next friend, JAMES L. SHEPARD, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, June 13, 1921.

1. PLEADING: Petition: Cause of Action: Liberal Construction: Where Petition States a Cause of Action, Though Defectively, it Will be Held Sufficient.   An attack upon a petition by objection that the same did not state a cause of action is not looked upon with favor, and the petition will be given a liberal construction, and if it states any cause of action whatever, it will be held sufficient although the cause of action may be defectively stated.

———:   ———:   Allegations Construed in Most Favorable Light to Plaintiff and if Elemental Fact, Not Expressly Stated, Follows by Necessary Implication, the Petition is Sufficient to Support Verdict. The allegations of a petition must be construed in most favorable light to plaintiff, and if the existence of an elemental fact is not expressly stated, but may be said to follow as a necessary implication from the facts alleged, the petition should not be adjudged insufficient to support the verdict.

3. ———:   ———:   Words and Phrases: Petition Held Sufficient after Verdict as Against Contention That it Did Not Contain Any Allegation that City Had Notice of Defect, The Word ''Maintain'' Used Therein Meaning to Keep up, Preserve or Continue the Defective Condition, and Suggests Active Participation in the Matter of Continuing the Condition.   Where the petition alleged that a sidewalk or footbridge was on the date of injury, and for a long time prior thereto, maintained by the defendant in a dangerous, unsafe and insecure condition, the petition was sufficient after verdict as against the objection that there was no allegation that City had actual or constuctive knowledge of defect in the sidewalk from which negligence could have been inferred, as the word "maintain" used in the petition means to keep up, preserve or continue the defective condition, and suggests some active participation in the matter of continuing the condition.

4. TRIAL PRACTICE: Appeal and Error: General Objection: Where Defendant Did Not Make Any Valid Objection to Exhibition of Injury, the Point Cannot be Considered on Appeal.   Where plaintiff was requested to exhibit to the jury her injured wrist and the

defendant's counsel stated, "I object," the use of such words did not constitute any objection whatever, and as defendant did not make any valid objection, it is not in a position to raise any point on appeal in reference to the occurrence.

5. **APPEAL AND ERROR: Improper Argument: Judgment Will Not be Disturbed for Improper Argument on Question of Injuries, Where Record Does Not Show Counsel Was Arguing Such Question.** While it is improper for counsel to argue to jury in personal injury action that they should assess plaintiff's damages in accordance with what they would take for a similar injury to themselves, and after a ruling has been made to persist in making argument over again and again, the judgment will not be disturbed where the record does not show that counsel was arguing the matter of plaintiff's injuries at time objection was made, and the argument preserved in record, does not indicate in what connection the jury were asked to put themselves in place of plaintiff.

6. **DAMAGES: Verdict for $1,725 for Injury to Wrist and Leg, Not Excessive.** In an action for damages to a girl fifteen or sixteen years old, earning $15.40 a week, by stepping into a hole in bridge with her left leg, causing her to fall and strike her left hand and wrist, the injuries being so painful that she fainted, remained in bed six weeks, suffering pain in her knee, back, and wrist, and after eight weeks, when she returned to work, was unable to work while standing, at times walked with a limp and had a permanent injury to her wrist, causing a knot upon the inner side, necessitating her to work with a bandage thereon, a verdict for $1725 is not excessive.

Appeal from the Circuit Court of Jackson County.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Rogers & Yates* for respondent.

*E. M. Harber* and *Francis M. Hayward* for appellant.

BLAND, J.—This is a suit for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $1725 and defendant has appealed.

The facts show that on August 12, 1919, plaintiff, a girl fifteen or sixteen years of age, was injured while

walking in the nighttime over the sidewalk portion of a bridge across Turkey Creek. This bridge was maintained by the defendant as a highway at Thirtieth Street and Southwest Boulevard in Kansas City, Missouri. Plaintiff's left foot and left limb went through a hole in the bridge to a point in the region of her knee, causing her to fall and to strike her left hand and wrist.

The petition charges that defendant—

"  .  .  . maintains and operates public streets, sidewalks and highways within the said Kansas City, and particularly at and near Thirtieth Street and Southwest Boulevard, at which place the defendant maintains and operates a sidewalk or footbridge across Turkey Creek.

"Plaintiff states that the said sidewalk or footbridge was on the 12th day of August, 1919, and for a long time prior thereto, maintained by the defendant for the purpose of permitting pedestrians to walk upon and travel over the same in a dangerous, unsafe and insecure condition. Which said sidewalk or footbridge was not reasonably safe for persons while traveling over the same, in ordinary modes.

"Plaintiff states that on said date and at about the hour of 11 p. m. while she was walking along over and upon said sidewalk or footbridge and without any knowledge of the dangerous, unsafe and insecure condition thereof, she stepped into a hole in the sidewalk or footbridge and then and there by reason of the aforesaid dangerous, unsafe and insecure condition, plaintiff was caused to fall, whereby she was seriously and permanently injured and crippled."

Defendant insists that "The court erred in not sustaining defendant's objection to the introduction of any evidence because plaintiff's petition stated no cause of action whatever, and in overruling defendant's motion in arrest of judgment." In support of this contention defendant urges that there is no allegation in the petition of negligence on the part of defendant, "no allegation

that the city had either actual or constructive knowledge of a defect in the sidewalk from which negligence could have been inferred.'' There was no demurrer to the petition but defendant answered.

An attack upon the petition such as was made in the trial court is not looked upon with favor. Under the circumstances we are required to give a liberal construction to the petition and if it states any cause of action whatever, we must hold it good atlhough the cause of action may be defectively stated. [Peters v. Kansas City Rys. Co., 224 S. W. 25, 27.] And we must construe the allegations of the petition in their most favorably light to the plaintiff and if the existence of an elemental fact is not expressly stated but may be said to follow as a necessary implication from the facts alleged, the petition should not be adjudged insufficient to support a verdict. [Wilson v. St. Joseph, 139 Mo. App. 557, 561; Hurst v. The City of Ashgrove, 96 Mo. 168, 172; Chance v. City of St. Joseph, 195 Mo. App. 1, 5.]

The petition alleges that ''said sidewalk or footbridge was on the 12th day of August, 1919, and for a long time prior thereto, maintained by the defendant . . . in a dengerous, unsafe and insecure condition.''

''The word 'maintain' does not mean to provide or construct, but means to keep up; to keep from change; to preserve (Worcest, Dict.); to hold or keep in any particular state or condition; to keep up (Webst. Dict.)

In Moon v. Durden, 2 Exch. 21, it was said: 'The verb 'to maintain,' . . . signifies to support what has already been brought into existence.'' [Verdin v. The City of St. Louis, 131 Mo. 26, 87; Barber Asphalt Paving Co. v. Hezel, 155 Mo. 391, 399.]

''The word 'maintain,' used as a verb, does not mean to provide or construct, but, as defined by lexicographers, means to keep up, to keep from change, to preserve. Worcester's Dictionary. To hold or keep in any particular state or condition, to keep up. [Webster's Dictionary.]

208 M. A—12

In the case of Moon v. Durden, 2 Exchequer R. 21, it was said: "The verb 'to maintain,' in pleading, has a distinct technical signification. It signifies to support what has already been brought into existence." [The Louisville, New Albany & Chicago Ry. Co. v. Godman, 104 Ind. 490, 492; Kendrick & Roberts v. Warren Bros. Co., 110 Md. 47, 72.]

"Webster's Dictionary, which has become in effect a law book on questions of construction, defines the word 'maintain' as follows: 'To hold, preserve, or keep in any particular state or condition; to sustain; not to suffer to fail or decline.' " [Brenn v. City of Troy, 60 Barbour's R. 417, 421; Boston v. Mayor, etc. of N. Y., 10 Barbour's R. 223, 236; Kovachoff v. St. Johns Lumber Co., 61 Ore. 174, 180.]

The petition in this case alleges that the city "maintained" the sidewalk in a dangerous, unsafe, insecure and not reasonably safe condition. From the foregoing definitions of the word "maintain" it is apparent that to maintain a defect means something more than mere notice or even knowledge of the defect. It means keeping up, preserving or continuing the defective condition and suggests some active participation in the matter of continuing the condition. So we think that the fact that the city had notice of the defect in the sidewalk may be said to follow as a necessary implication from the facts alleged in the petition, and the petition is good after verdict under the circumstances present in this case.

During the trial the following occurred—.

"Q. Just come over here, please, and let the jury see it?

"MR. HAYWARD: I object to that, Your Honor.

"MR. ROGERS: I offer to exhibit the injury on the wrist to the jury.

"THE COURT: Proceed.

"To which ruling and action of the court the defendant by its counsel then and there duly excepted.

"Q. Just let the gentlemen see it.

"Plaintiff here steps down to the jury, and walks up and down before the jury; and the jury examines and feels of plaintiff's wrist."

It is insisted that the court erred "in permitting the jury to feel of plaintiff's wrist, thereby exciting the sympathy of the jury in plaintiff's behalf, and increasing the size of the verdict, which was excessive." We think that defendant is in no position to raise any point in reference to this occurrence for the reason that it did not make any valid objection. The words "I object" have often been held to be no objection whatever. [State v. Lewis, 264 Mo. 420, 429; State v. Tatman, 264 Mo. 357, 370; Breen v. United Rys. Co. of St. Louis, 204 S. W. 521, 522, and cases therein cited.]

It is last insisted that the verdict is excessive and that the size of it may have been increased by improper remarks of plaintiff's counsel in his final argument to the jury.    The argument objected to is as follows:

"MR. ROGERS:    .   .   .    'Put yourself in her place'—.

"MR. HAYWARD: (interrupting) 'I object to that, Your Honor, and ask that the jury be instructed to disregard it.'

"THE COURT: 'Let that be withdrawn; and, the jury is instructed to disregard it.'

"MR. ROGERS:    'Put yourself in this little girl's shoes'—.

MR. HAYWARD: (interrupting) 'I object again, to that form of argument; and I ask that the jury be instructed to disregard it.'

"THE COURT: 'Yes, the jury will disregard it.' "

It has been held that it is improper to argue to the jury that they should assess plaintiff's damages in accordance with what they would take for a similar injury to themselves; that after a ruling is once made counsel should not persist in making the same improper argument over and over again. There is nothing in the matter preserved in the record to show that plaintiff's counsel was arguing to the jury the matter of plaintiff's injuries

at the time the above words complained of in the argument were uttered. In fact, there is nothing in the argument preserved to indicate in what connection the jury were asked to put themselves in place of plaintiff. If an appellant desires to raise a point in connection with his opponent's argument to the jury, he should abstract enough of the argument for us to know exactly what it was and then point out precisely what the misconduct of his opponent consisted of. Defendant's argument to the jury made prior to that of plaintiff's counsel is not free from objection. In an ingenious way defendant's counsel drew the attention of the jury to the fact that if some of them were tax-payers, they would be called upon to help pay any judgment returned against defendant.

The evidence shows that plaintiff's injury was so painful that it caused her to faint at the time it was received and that she was taken home in an automobile. She remained in bed for six weeks, suffering pain in her knee, back and wrist. At the time of her injury she was employed in a packing house "putting slugs on cans." She was unable to go back to work for a period of eight weeks and when she finally returned she was unable to do the same work for the reason that it required her to stand, so she was put to work in the labeling room where she could sit down. She was earning $15.40 per week, which amount was lost for a period of eight weeks.

The trial was about ten months after the injury and at that time plaintiff still had some swelling in her knee. At times her knee pained her and if she walked a great distance it caused her to limp. However, from the admission of plaintiff in regard to being able to attend dances and to dance, we conclude that she had to a great degree recovered from the injury to her limb at the time of the trial. However, the evidence shows that at the time of the trial she had a knot on her wrist due to an injured tendon. This knot was described at "a nodule on the inner side of her wrist." This was an involment of the little bursa— "which is one of the extensors of the

muscles, that the muscles terminate in." This knot was "quite visible" at the time of the trial. This bursa was "ruptured out of its sheath and projects out a little." When working it was necessary for plaintiff to keep a tight bandage around her wrist. The medical testimony was that the injury to the wrist was permanent; that she would be able to perform ordinary work with that hand but that the "wrist will be sore whenever she lifts anything of any weight at all." That it would be sore whenever plaintiff attempted to do heavy work; her wrist "will be weaker" than normal. In view of the evidence, we do not think the verdict is excessive.

The judgment is affirmed. All concur.