MARYLAND DREDGING AND CONTRACTING
COMPANY *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 310.   Argued April 25, 1916.—Decided May 8, 1916.

A government contract for dredging a channel contained a provision that time was an essential feature, and provided for a specified amount per day as liquidated damages for delay and not as a penalty; it also provided that unless extraordinary and unforeseen conditions should supervene the time allowed was sufficient and extensions could only be granted on recommendation of engineer in charge affirmed by Chief of Engineers; a submerged forest which had not been discovered by the contractor prior to commencement of the work, although the contract placed the burden on him to do so, was encountered and so impeded progress as to cause delay for which the Government deducted as liquidated damages the amount specified in the contract.   In a suit to recover that amount *held:*

The provision in the contract that the time was sufficient unless extraordinary conditions should supervene does not amount to a promise for extension if such conditions do supervene.

The extent of promise for an extension under the contract was confined to what the engineer in charge would grant with the sanction of the Chief Engineer; nor was the Chief Engineer bound, in the absence of fraud, to give his sanction to a recommendation of the engineer in charge for an extension.

For extraordinary conditions to supervene in such a case they must come into being after commencement of the work, and not merely be thereafter discovered to have existed and still to exist.

The provision in the contract for liquidation of damages at $20 per day contains no element of deception or exorbitance and the contractor cannot escape the terms agreed upon.


THE facts, which involve the construction of a contract with the United States for excavation of a channel, and the liability of the contractor for damages for delay in completion, are stated in the opinion.

*Mr. C. C. Calhoun,* with whom *Mr. D. B. Henderson* and *Mr. J. Barrett Carter* were on the brief, for appellant:

The submerged forest encountered as it was entitled appellant to an extension of time. Appellant is also entitled to such extension under paragraph 16 of the specifications, and Article V of the contract. Provisions of contract and specifications relieving contractor from performance are equivalent to the phrase "Act of God" as defined in 1 Cyc. 758, and Words and Phrases, 118. There is no inconsistency between paragraph 16 of the specifications and Article V of contract. The construction given by arbitrator named in contract should govern. The sanction of the Chief Engineer is a ministerial and not a judicial act. The construction given by parties to the contract should control.

The first paragraph of Article V of the contract contemplated a penalty and not liquidated damages. There is a distinction between liquidated damages and penalty.

In support of these contentions see *Barlow* v. *United States,* 35 Ct. Cls. 514; *S. C.,* 184 U. S. 123; *Chicago & Santa Fe R. R.* v. *Price,* 138 U. S. 187; *Dist. of Col.* v. *Gallaher,* 124 U. S. 505; *Garrison* v. *United States,* 7 Wall. 688; *Gibbons* v. *United States,* 109 U. S. 200; *Kihlberg* v. *United States,* 97 U. S. 398; *New Jersey Foundry* v. *United States,* 44 Ct. Cls. 570; 1 Sedgwick on Damages, 9th Ed., p. 779; *Stewart* v. *Stone,* 14 L. R. A. 215, note; *Sun Printing Assn.* v. *Moore,* 183 U. S. 642; *Tayloe* v. *Sandiford,* 7 Wheat. 13; *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105; *United States* v. *Gleason,* 175 U. S. 589; *Van Buren* v. *Digges,* 11 How. 461; *Williams* v. *Grant,* 1 Connecticut, 487.

*Mr. Assistant Attorney General Huston Thompson* for the United States.

Mr. Justice Holmes delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims dismissing the claimant's petition upon demurrer. On August 15, 1908, the claimant made a contract with Captain Brown of the Engineers, acting for the United States, to excavate a channel from Beaufort Inlet to Pamlico Sound through Core and Adams Creeks in conformity with specifications made part of the contract. It was approved on September 10 and required the work to be begun within forty-five days after date of notification of approval, September 14, and to be completed within eighteen months. The work not having been finished on time $7,320 of the agreed compensation was withheld as liquidated damages and $210.50 as additional costs of superintendence and inspection, $7,530.50 in all, for which sum this suit is brought.

The petition alleges that after getting through Core Creek to and through the headwaters of Adams Creek to a point on tide water about five miles from its mouth, where for a mile and a half it averages more than 1200 feet wide and for the next three miles and a half 2500 feet, the stumps and roots of a submerged forest were encountered at about eight feet below the bottom of the water, which made it impossible to do the work with the ordinary machinery and in the ordinary way, or to finish the work by the time agreed. It is alleged that the forest was submerged by some abnormal force and violence of the elements, and that it could not have been discovered by the ordinary methods of inspection and was not discovered in fact, although the claimant and others and the Government had exercised every known precaution and had made exhaustive examinations with the utmost care and skill. The petition sets up that this was a prevention 'by abnormal force and violence of the elements' within

the contract and that the claimant also was entitled to an allowance of time under a clause in the specifications stating that the time is considered sufficient 'unless extraordinary and unforeseeable conditions supervene.' It also sets up that an extension of time was recommended by Captain Brown although disallowed by the Chief Engineer. Finally the petition alleges that it was known by the Government officials when the contract was made that the portion of the canal excavated by the claimant could not be used to any practical extent for commercial purposes until adjoining portions of a proposed line were completed and that the additional work was not provided for or seriously contemplated within the time of the claimant's work. It is concluded that although the contract purports to provide for liquidated damages fixed at $20 a day, yet in the circumstances it really imposed a penalty and that the Government has no right to retain the sum.

As has been implied already the contract agreed "that time shall be considered as an essential feature of this contract, and that in case of the failure upon the part of the party of the second part to complete this contract within the time as specified and agreed upon that the party of the first part will be damaged thereby, and the amount of said damages being difficult, if not impossible of definite ascertainment and proof, it is hereby agreed that the amount of said damages shall be estimated, agreed upon, liquidated, and fixed in advance, and they are hereby agreed upon, liquidated, and fixed at the sum of twenty (20) dollars for each division for each and every day the party of the second part shall delay in the completion of this contract" and the claimant agrees to pay that amount 'as liquidated damages, and not by way of penalty.' It is agreed further that the United States shall have the right to recover all costs of inspection and superintendence incurred by it during the period of delay, and that it may

retain all the above-mentioned sums from any moneys falling due under the contract.

There is a proviso that if the claimants 'shall by strikes, epidemics, local or state quarantine restrictions, or by the abnormal force or violence of the elements, be actually prevented from completing the work . . . at the time agreed upon' without contributory negligence on his part 'such additional time may, with the prior sanction of the Chief of Engineers, be `allowed him' . . . 'as, in the judgment of the party of the first part, or his successor, shall be just and reasonable.' As we have intimated, the specifications also state that the time allowed is considered sufficient 'unless extraordinary and unforeseeable conditions supervene.' The claimant further thinks that he finds some support for his argument in a provision that 'solid rock, large bowlders, and compact gravel will not have to be removed at the prices bid for ordinary excavation. If such materials should be encountered their removal, if required by the engineer, will be done under special agreement and paid for as extra work.' On the other hand the claimant was required to remove all trees and "The channel must be cleared of all snags, logs, roots, stumps, or wreckage that project into or encroach in any way upon the cross section, . . . the cost of same being included in the unit price bid for excavation." The claimant invokes a provision that the engineer's decision as to quality, quantity and interpretation of the specifications shall be final; and this ends the statement of his case.

It is hopeless to argue against the provisions that we have recited, and the further express warning that each bidder 'is expected to examine and decide for himself, as no allowance will be made should any of it prove to be otherwise than as stated,' except as above recited with regard to solid rock, &c. It is suggested that the special agreement to be made for the removal of 'such materials'

means materials of similar kind; but the phrase cannot be stretched to cover roots. The statement in the specifications that the time is sufficient unless extraordinary conditions supervene does not promise an extension if such conditions do supervene. The extent of this promise is found in the words of the contract providing for the allowance of such additional time as with the sanction of the Chief Engineer the engineer in charge may think reasonable. Those words tend also to support the contention of the Government that 'supervene' means come into being in the course of the work, as in the case of strikes, epidemics, &c., and not merely be discovered to have existed and still to exist. We may add that the averment hazarded that the submergence of the forest was due to abnormal force of the elements is too obvious an attempt to pervert the meaning of the proviso as to being actually prevented by such force from completing the work, to require analysis. But it is enough to say that any extension depended on the sanction of the Chief of Engineers and that that sanction was denied. It is said that the engineer in charge construed the contract differently as he recommended an allowance of time. But the ground of the recommendation does not appear to have been an incorrect interpretation of the contract, on the contrary it is alleged that the liquidated damages were withheld by Captain Brown; and if his interpretation had been wrong, it is hard to see how it would have bound his superior on whose sanction the recommendation depended for effect. The suggestion that it was the duty of the Chief Engineer to give his sanction in the absence of fraud finds no support in the words used. The claimant must abide by the words. *Carnegie Steel Co.* v. *United States,* 240 U. S. 156, 164.

The allegations by which the claimant attempts to avoid his contract making time of the essence, that the damages were difficult to prove and that therefore they should be fixed at twenty dollars a day, are too specula-

tive to do more than emphasize the necessity for the liquidation. There is no element of deception or exorbitance and although the case seems a hard one we see no ground upon which the claimant can escape from the terms to which he has agreed. *United States* v. *Bethlehem Steel Co.*, 205 U. S. 105, 119.

*Judgment affirmed.*