In re LION OVERALL CO., Inc.

No. 78528.

District Court, S. D. New York.

Sept. 23, 1943.

790

Benjamin Siegel, of New York City (Benjamin Brownstein, of New York City, of counsel), for trustee.

Howard F. Corcoran, U. S. Atty., of New York City (R. Lewis Townsend, Asst. U. S. Atty., of New York City, of counsel), for the United States.

BRIGHT, District Judge.

The United States petitions for a review of an order of the referee expunging its claim upon the ground that it is for a penalty, and, therefore, not provable under Section 93, sub. j, of the Bankruptcy Act (11 U.S.C.A.), which provides that "Debts owing to the United States * * * as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained * * *." I think the order must be reversed and the petition sustained.

On July 30, 1940, the bankrupt entered into a contract with the United States under which he agreed to furnish 25,000 one-piece suits at a unit price of $2.12, less a discount of $\frac{1}{2}$ of 1% for payment within twenty calendar days. They were to be furnished 10% within twenty-one days, 12% within the next seven days, and 16% each six days thereafter, until the quantity contracted for had been delivered. The contractor did not comply with his contract, and on January 15, 1941, the government terminated the contract, at which time 5,991 suits had not been delivered. Thereafter, the United States procured 5,943 of the suits from another contractor at an excess cost of $3.56. The contract also contained the following clause:

"If the contractor refuses or fails to make delivery of the materials or supplies within the time specified in Article 1, or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, the amount as set forth in the specifications or accompanying papers, and the contractor and his sureties shall be liable for the amount thereof: Provided, however, That the Government reserves the right to terminate the right of the contractor to proceed with deliveries of such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: * * *"

Under this clause, the government claimed there was due for liquidated damages $20,886.95, the computation and amount not being disputed. The contractor was entitled to a credit of $5,509.75 for suits furnished, and $8,648.06 for liquidated damages previously deducted from payments made to him, a total of $14,157.81. Crediting this amount, the government filed a claim for the balance $6,729.14, plus the $3.56 excess cost, $8 for a set of master patterns and $10 for a sample suit (the latter two having been loaned to the government and not returned), a total of $6,750.70.

The referee disallowed all of the claim, holding that $6,729.14 thereof was for penalties and the balance was offset against the $14,157.81 due the bankrupt.

The clause quoted clearly embraces the agreement of the parties, both of whom recognized in unambiguous language that if the contractor shall fail to deliver on time, the actual damage to the government for the delay will be impossible to determine. The fact that more than excess cost was stipulated for justifies a conclusion that damages in excess of that established might be sustained which would not be

capable of ascertainment. The contract was made for an article of military equipment for our troops at a time when the war clouds from Europe were gathering ominously about this country and when it could reasonably be anticipated, certainly by the Army and Navy Departments, that sooner or later we might be embroiled in the conflict. While there were others in the country who were manufacturing similar garments, what damage might result from a delayed delivery could not be ascertained with accuracy. In any event, the agreement was made without any overreaching or fraud, and as an obvious spur to prompt performance.

■ Such an agreement is not against the public policy of the country. Robinson v. United States, 261 U.S. 486–488, 43 S. Ct. 420, 67 L.Ed. 760. Its construction and application will be governed by federal law. Duncan's Heirs v. United States, 32 U.S. 435–449, 7 Pet. 435–449, 8 L.Ed. 739; Byron Jackson Company v. United States, D.C., 35 F.Supp. 665–667; Avev v. Leather Products Co., Ohio App. 1st District, December 14, 1942, 55 N.E.2d 813. There is no presumption of invalidity as to it; it is to be construed without bias. In re Outfitters' Operating Realty Co., 2 Cir., 69 F.2d 90–92, affirmed Irving Trust Co. v. A. W. Perry, Inc., 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379.

■ The law lends no support to the contention that parties may not bona fide in a case where the damages are of an uncertain nature, estimate and agree upon a measure of damages which may be sustained from a breach of an agreement, and where they have been so liquidated the contract will be enforced. Sun Printing & Publishing Association v. Moore, 183 U.S. 642–662, 22 S.Ct. 240, 46 L.Ed. 366. The claimant must abide by his own words. Maryland Dredging & Contracting Co. v. United States, 241 U.S. 184–189, 36 S. Ct. 545, 60 L.Ed. 945. The courts after some pulling and hauling have become more tolerant of such provisions, have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in a recovery of an amount stated as liquidated damages, upon violation of a contract, and without proof of the damages actually sustained. United States v. Bethlehem Steel Co., 205 U.S. 105–119, 27 S.Ct. 450, 51 L.Ed. 731. In that case, war with Spain was imminent, and the fact that not very long after the contract had been signed the war was near to its end, the importance of the time element had largely disappeared, and practically no damage to the government had accrued, was not permitted to affect the meaning of a similar clause, nor render its language substantially worthless for any security for the proper performance of the contract as to the time of delivery. Such a clause will be given effect where the damages are uncertain in nature or amount, or are difficult of ascertaining, or where the amount stipulated for is not extravagant or disproportionate to the amount of the property lost as to show that compensation was not the object aimed at, or as to imply fraud, mistake, circumvention or oppression. The present rule is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance, and because adjusting in advance, and amicably, matters the settlement of which through courts would involve difficulty, uncertainty, delay and expense. Wise v. United States, 249 U.S. 361, 365, 366, 39 S.Ct. 303, 63 L.Ed. 647.

■■ It is argued here that the amount of liquidated damages of $20,000 is clearly excessive as compared with the contract price of $53,000, and in view of the fact that the only excess cost to which the government was put in procuring the suits not furnished was $3.56. That argument was discounted in the Bethlehem case, supra, and has been held not to be a proper basis of decision in Ellicott Machine Co. v. United States, 43 Ct. Cl. 232–235. What may be the situation after the contract is not to invalidate what the parties clearly agreed to beforehand. The relevant moment is the time when the contract was made and the losses which were then in contemplation. Frick Co. v. Rubel Corporation, 2 Cir., 62 F.2d 765–767. It does not appear upon the face of the contract that the liquidated damages agreed upon are out of all proportion to any possible loss. Wood v. Niagara Falls Paper Co., 2 Cir., 121 F. 818, 819; Board of Commerce of Ann Arbor v. Security Trust Co., 6 Cir., 225 F. 454, 467.

■ If reference is made to the contract as of the date of its signing, cer-

tainly a stipulated liquidated damage of ½ of 1% of $2.12 for each day each unit is not furnished does not appear disproportionate, nor can any conclusion be drawn that there was any mistake, circumvention or oppression. And a comparison of the total damage with the figure of excess cost to determine that the first is disproportionate, would do violence not only to the cases cited, determining that the situation at the time of contracting is the test, but also to the specific agreement made that both amounts might be recovered. It could hardly be assumed that the contractor would default to the extent that he did. Certainly the government could not so assume, and if the contractor might have, he did so either knowing he had not the organization or equipment or foresight to perform. It seems that a court should look with disfavor upon an attempt to defeat the express words of an agreement entered into voluntarily, knowingly and without any overreaching.

Reliance is placed upon the case of Kothe v. R. C. Taylor Trust, 280 U.S. 224, 50 S.Ct. 142, 143, 74 L.Ed. 382. I do not think that case is controlling here. There a definite sum of $5,000 was stipulated as so-called liquidated damages in the event that a bankruptcy ensued during the term of the lease, which bankruptcy it was agreed would be deemed a breach. The court there seemed to be influenced by the fact that the real design of the challenged provision was to insure to the lessor preferential treatment in the event of bankruptcy, and said:

"Here, we find the lessee in a lease for two years agreeing that the mere filing of a petition in bankruptcy against him shall be deemed a breach and thereupon, ipso facto, it shall be terminated and the lessor shall become entitled to re-enter, also to recover damages equal to the full amount of the rent reserved for the remainder of the term. The amount thus stipulated is so disproportionate to any damage reasonably to be anticipated in the circumstances disclosed that we must hold the provision is for an unenforceable penalty. The parties were consciously undertaking to contract for payment to be made out of the assets of a bankrupt estate—not for something which the lessee personally would be required to discharge. He, therefore, had little, if any, immediate concern with the amount of the claim to be pre-sented; most probably, that would affect only those entitled to share in the proceeds of property beyond his control."

 There is obviously no similarity to the situation here presented. The claim should be reinstated.