## UNITED STATES v. WALKOF.

### No. 252.

Circuit Court of Appeals, Second Circuit.

July 18, 1944.

Benjamin Siegel, of New York City (Benjamin Siegel and Benjamin Brownstein, both of New York City, of counsel), for Nathaniel Walkof, as trustee in Bankruptcy of Lion Overall Co., Inc.

James B. M. McNally, U. S. Atty., of New York City (R. Lewis Townsend, Asst. U. S. Atty., and Francis M. Shea, Asst. Atty. Gen., both of New York City, and Leavenworth Colby, Attorney, Department of Justice, of Washington, D. C., of counsel), for United States of America.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On July 30, 1940 Lion Overall Co., Inc. entered into a written contract with the United States to furnish 25,000 one-piece working suits to the War Department at the Philadelphia Quartermaster Depot for a unit price of $2.12, less a discount of one-half of 1% for payment within twenty calendar days. The suits were to be delivered 10% within twenty-one days after date of receipt of notice of award, 12% within the next seven days, and 16% each six days thereafter, until deliveries of the quantity contracted for should be completed. The total contract price for the garments was $53,000. The contractor defaulted in making deliveries under the contract and on January 15, 1941, the government terminated his right to proceed further. At that time, 19,009 suits had been delivered out of the total of 25,000, but 5,991 had not been delivered although the last delivery date under the contract schedule was September 27, 1940. Thereafter, in accordance with the provisions of Article 17 of the contract, the United States procured 5,943 suits from another contractor at a unit cost price of $2.11 per garment, the delivery of which was to be made on or before February 26, 1941. The result of the purchase of the suits under the new contract was an added cost to the government of only $3.56. But the latter presented not only a claim for this amount and also for two other small items aggregating $18, but also a claim for liquidated damages against the estate of the contractor, Lion Overall Co., Inc., which was adjudicated a bankrupt in or about April 1941. It is conceded that if the terms of the contract be literally applied, liquidated damages became due for the delay in performance to the amount of $6,729.14 in addition to the item of $3.56 and the two other items which aggregated $18. The gross amount claimed by the government as liquidated damages equalled $20,886.95 but it applied to this gross sum a credit of $14,157.81, representing a balance due for suits which it had received from the contractor and had not paid for.[1]

The referee in bankruptcy allowed the government only its actual damages of

---

[1] The provisions of the contract relating to liquidated damages were as follows:

"Article 17. Delays—Liquidated damages—If the contractor refuses or fails to make delivery of the materials or supplies within the time specified in Article 1, or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, the amount as set forth in the specifications or accompanying papers, and the contractor and his sureties shall be liable for the amount thereof. Provided, however, That the Government reserves the right to terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the contractor and his sureties any excess costs occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere. * * *"

"Liquidated Damages: Under the terms and conditions stipulated in Article 17 of this contract, the contractor shall pay to the Government, as liquidated damages, for each unit undelivered, a sum equal to

$21.56 and rejected its claim of $6,750.70 for net liquidated damages on the ground that it was really a claim for a penalty rather than for liquidated damages and was, therefore, not provable because of Section 57, sub. j [2] of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j. Upon review Judge Bright reversed the referee and allowed the government's entire claim.

The question before us is whether the item of $20,886.95 was a penalty within the meaning of Section 57, sub. j.

The appellant contends that under the New York law the liquidated damage clause in the contract imposes a penalty and refers to the recent decision of Weinstein & Sons, Inc., v. City of New York, 264 App.Div. 398, 35 N.Y.S.2d 530, affirmed 289 N.Y. 741, 46 N.E.2d 351, in support of this contention. The provision for liquidated damages in that case is found in a contract between Weinstein & Sons Inc. and the City of New York to supply dress woolens for a W. P. A. municipal sewing project at a price of $22,057.59. The New York courts held that the liquidated damages provided for delay in making deliveries and equalling 20% of the contract price bore no reasonable relation to any probable damage that might follow a breach of the contract and that the subject-matter of the contract was something that could readily be obtained from others. Accordingly they rejected the claim for liquidated damages. The inconvenience of late deliveries whereby the City of New York had to make some change in its plans for distribution of the dress woolens in its welfare work is not, in our opinion, a factor to be compared with delays to the national government in procuring working suits for the War Department at a time when it was inaugurating military conscription, preparing to supply the needs of the army and getting ready to meet a powerful enemy. The damages to it that might arise from delay in obtaining equipment were incalculable and might well be very great. Delay in obtaining equipment might result in losses far greater than the difference between the cost of the articles contracted for and others that might be ob-

tained within a reasonable time. Delay might disrupt preparations for war in all sorts of ways and rising prices and widespread demands for working suits accompanying military preparations might increase the time already lost and the expense already suffered by interposing fresh obstacles to making new contracts on reasonable terms. The fact that the goods which were not delivered in time could be obtained under later contracts might not obviate serious losses to the whole war effort occasioned by delay in supplies for the government's needs. Under principles long established the dangers and possible losses that might ensue if the contractor should default in its deliveries were things which the government had a right to protect itself against by a clause for liquidated damage, for they could be fairly provided for in no other way than by such an estimate. In view of the emergency and the vital necessity of obtaining war supplies promptly, we hold that the clause in the agreement under consideration has been rightly sustained as a contract provision not imposing a penalty.

Provisions for liquidated damages inserted in public contracts were sustained by the Supreme Court in United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731; Maryland Dredging & Contracting Co. v. United States, 241 U.S. 184, 36 S.Ct. 545, 60 L.Ed. 945; Robinson v. United States, 261 U.S. 486, 43 S.Ct. 420, 67 L.Ed. 760. See also, as to allowance of such claims in bankruptcy, In re Outfitters' Operating Realty Co., 2 Cir., 69 F.2d 90, 92; In re Oscar Nebel Co., 3 Cir., 117 F.2d 326. We cannot see that the New York courts have any different rule from that of the United States Courts in respect to the allowance of liquidated damages for delay, nor do we for a moment believe that they would adopt a different rule in cases where the contract is essentially one to provide for war equipment and the extent of the damage from delay cannot be foreseen and its amount might be very great.

It is unnecessary to deal with the conclusion of the district judge that the ef-

one-half of one percentum (½ of 1%) of the price of each unit for each day's delay after the date or dates specified."

[2] "(j) Debts owing to the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law."

fect of the contract is to be determined from decisions founded on principles of general jurisprudence and gathered from the federal rather than from precedents found in the New York courts. As is frequently found to be the case, we see no difference between the decisions of those courts in controversies like the present and regard the judgment in Weinstein & Sons Inc. v. City of New York as dependent upon its particular facts, which are distinguishable from those in the case at bar.

For the foregoing reasons the claim of the United-States is allowed and the order affirmed.