### UNITED STATES v. PADDOCK.

### In re GLOBE AIRCRAFT CORPORATION.

#### No. 12738.

United States Court of Appeals
Fifth Circuit.
Feb. 18, 1950.

A. W. Christian, Asst. U. S. Atty., Ft. Worth, Tex., O. Morris Harrell, Asst. U. S. Atty., Ft. Worth, Tex., Frank B. Potter, U. S. Atty., Ft. Worth, Tex., for appellant.

Richard U. Simon, Ft. Worth, Tex., Frank B. Appleman, Ft. Worth, Tex., Bennett L. Smith, Ft. Forth, Tex., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

In our former opinion in this case, we allowed two claims of the United States against the trustee in bankruptcy of a government contractor; both arose out of war contracts; one was for liquidated damages arising from a breach of the warranty against contingent fees; the other was for excessive profits of the bankrupt under war contracts. All of the bankrupt's contracts admittedly contained this warranty; and beyond peradventure the warranty was breached unless the contingent-fee payments by the bankrupt were made to selling agencies maintained by the contractor for the purpose of securing business.

After further careful consideration, we think that the interpretation of the exceptive clause in the warranty contended for by the appellee would nullify the warranty, which certainly was not the intention of the parties. The purpose of this exception, as indicated by the use of the word "maintained," was to allow contractors to continue the existence of something already in use, not to introduce a special method of securing government contracts. The idea ordinarily conveyed by the phrase "to maintain" is not to provide or construct something new, but to preserve free from change a method of doing business to which the party has been accustomed. Cf. Smallwood v. Gallardo, 275 U.S. 56, 61, 48 S.Ct. 23, 72 L.Ed. 152; Moore Ice Cream Co. v. Rose, 289 U.S. 373, 377, 53 S.Ct. 620, 77 L.Ed. 1265;

Walker v. Alexander, Tex.Civ.App., 212 S.W. 713, 717; O'Connell v. Kansas City, 208 Mo.App. 174, 231 S.W. 1040; Raulston v. Mutual Ben. Health & Accident Ass'n, 22 Tenn.App. 101, 118 S.W.2d 881, 885. In Reynolds v. Goodwin-Hill Corporation, 2 Cir., 154 F.2d 553, the court deemed itself foreclosed by the findings below from a consideration of the question as to whether the sales director came within the exception to the warranty.

■ Conceding that the warranty was breached, a question is presented as to whether the claim is for liquidated damages or for a penalty. We think the purpose of this warranty was not to penalize contractors, but to protect the government from financial loss. The practice of paying contingent fees to secure government contracts was a well-known evil, which was costing the government large sums of money, when Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, was promulgated. It was against public policy, but the amount of the damages was hard to prove, which accounts for the stipulation in the warranty that the amount of the contingent fee should be the measure of damages. In Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 126, 92 L.Ed. 32, cited by appellee, the court recognized that contractual provisions for liquidated damages serve a "useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts"; and the court cited U. S. v. Walkof, 144 F.2d 75, 154 A.L.R. 1250, wherein the Second Circuit held in a bankruptcy proceeding that the agreement for liquidated damages did not impose a penalty, and allowed the government's claim for the full amount, citing: United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731; Maryland Dredging & Contracting Co. v. United States, 241 U.S. 184, 36 S. Ct. 545, 60 L.Ed. 945; Robinson v. United States, 261 U.S. 486, 43 S.Ct. 420, 67 L. Ed. 760; In re Outfitters' Operating Realty Co., 2 Cir., 69 F.2d 90, 92; In re Oscar Nebel Co., 3 Cir., 117 F.2d 326.

■ As to the government's claim for excessive profits, we think that the initiation of the renegotiation proceedings prior to bankruptcy and the order of the Board after bankruptcy created a situation within the contemplation of Section 103, sub. a(5) of Title 11 U.S.C.A., wherein "provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge" were included among the debts that may be proved and allowed against the estate. The decisions of In re Anton, D.C., 11 F.Supp. 345; In re McBryde, D. C., 99 F. 686, and Chase v. Farmers' & Merchants' National Bank, 3 Cir., 202 F. 904, are in accord with said section 103, sub. a (5). In re Barrett & Co., D.C., 27 F.2d 159, is not in conflict therewith, so far as the actual decision thereof is concerned, though there are conflicting *dicta* in the opinion. Therefore, an analysis of the Barrett case is deemed necessary:

■ On June 26, 1923, Rhodes sued Barrett & Co. in a state court for the recovery in specie of 68 bales of cotton. On July 30, 1923, Barrett & Co. was adjudged a bankrupt. Counsel for Barrett & Co. and for the trustee in bankruptcy appeared in the state court, but refused to participate in the trial. After these attorneys had left the court room, Rhodes amended his petition so as to change the nature of the suit; and then it no longer was suit of which the trustee had notice. Both the district court and this court held that the judgment so entered did not bind the trustee of the bankruptcy estate. The original suit set forth a pure tort, not a debt provable in bankruptcy. The amended suit, without notice to the trustee and of doubtful propriety under the state law, entirely changed the case, and made it a suit on an implied contract, and thus a debt provable in bankruptcy. On this narrow ground the case was correctly decided, but a good deal of *dicta* was indulged in by the court. Also some sound principles were announced as follows: "Since Peck v. Jenness, 7 How. 612, 12 L.Ed. 841, and Eyster v. Gaff, 91 U.S. 521, 23 L.Ed. 403, it has been recog-

124

nized that the bankruptcy of a person does not, of itself, divest other courts than the bankruptcy court of their jurisdiction. Pending suits to enforce specific liens or to deal with specific property (other than insolvency proceedings) are generally not to be interfered with by the bankruptcy court, unless to have the trustee intervene. A personal suit against the bankrupt is not abated, though it may, if on a provable debt, be temporarily stayed pending bankruptcy. The Court does not judicially notice the bankruptcy proceeding, but it must be pleaded and proved. Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985."

 In re Barrett was correctly decided, but too many reasons were given for the decision. The correct reason was stated in the last paragraph, save one, to the opinion of the district judge on page 162 of 27 F.2d; and we need to cite further only the bankruptcy statute itself, which, in enumerating what debts may be proved and allowed against the bankrupt's estate, expressly provides that debts of the bankrupt may be proved and allowed against his estate which are founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, etc. Section 103, sub. a(5). See also 8 C.J.S., Bankruptcy, § 401, page 1261. It is worthy of note that instead of Section 5106 of the Revised Statutes (construed in Boynton v. Ball, supra) we have 11 U.S.C.A. 103, sub. a(5), which indicates that all proceedings in other judicial or administrative tribunals are not frozen by an adjudication in bankruptcy; and that neither courts nor administrative tribunals are required in actions *in personam* to take judicial notice of bankruptcy proceedings.

In allowing these two claims, we are not settling all accounts between the United States and the appellee, but are leaving open for the court below such other claims, counterclaims, and set-offs, as either party may have against the other. The petition for rehearing is denied.