## UNITED STATES v. LE ROY DYAL CO., Inc.

### No. 10277.

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1950.

Decided Dec. 28, 1950.

Neil Brooks, Washington, D. C. (Alfred E. Modarelli, U. S. Atty., John J. Barry, Asst. U. S. Atty., Newark, N. J., George E. Cooper, Katherine A. Markwell, Kenneth R. Ellenberger, Attys., U. S. Department of Agriculture, Washington, D. C., on the brief), for appellant.

Baruch S. Seidman, South River, N. J. (Burton & Seidman, South River, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal concerns the application of a provision for liquidated damages in a contract between the United States, through Commodity Credit Corporation, and LeRoy Dyal Company, Inc., a dealer in potatoes.

Neither side criticizes the findings of fact by the learned District Court. The only issue presented is one of law, but a brief statement of the facts will add to the understanding of the legal question. The contract between the Commodity Credit Corporation and the defendant was made on July 15, 1947. Defendant agreed to operate as a dealer to carry out the

1947 crop Irish potato price support program. The contract provided that the defendant was to purchase potatoes only from eligible growers. Defendant purchased 367,400 pounds of Irish potatoes from a farmer who was not an eligible grower. The defendant did not, at the time of purchase, know that this farmer was not an eligible grower, but that information was readily available to him. The defendant had had business dealings with the Commodity Credit Corporation prior to this contract. The contract provided for payment of $3.00 per hundredweight as liquidated damages if the dealer contracting with the CCC purchased potatoes from an ineligible grower.[1]

[1] The learned Trial Judge held, as a conclusion of law, that the provision for liquidated damages "is in the nature of a penalty under the circumstances of this case" and gave the plaintiff judgment for nominal damages only. This appeal followed. The sole question before us is the correctness of refusal by the District Court to award the plaintiff the amount stipulated for in the contract and called liquidated damages. It is hardly necessary to add that the name given to the provision in the contract does not determine whether it is to be treated as liquidated damages or as a penalty.

■ The first question met is the law by which we are to be guided in deciding the case. Many New Jersey decisions have been cited to us. We think it clear that they do not control. The latest Supreme Court decision involving the validity of a liquidated damage provision in a contract made by a United States agency is Priebe & Sons, Inc. v. United States, 1947, 332 U.S. 407, 68 S.Ct. 123, 126, 92 L.Ed. 32. Mr. Justice Douglas, speaking for the majority, applies to the question concerning a stipulation for liquidated damages "the principles of general contract law." The very vigorous minority, in two dissenting opinions, denies the right of the courts to exercise judicial supervision over the liquidated damage term in a contract inserted by government agencies in pursuance of Congressional authority. But neither majority nor minority so much as hints that state law controls. Indeed, in view of the principle declared by the Court in Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, it seems clear to us that whatever the rule is to be, it is not to be determined by reference to decisions of any particular state.

■ However, the question is not, we think, of controlling importance here. The general principle with regard to liquidated damages is not difficult to state. In Restatement, Contracts § 339 it is worded as follows:

(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

1. The contract used was a standard form. Article 11 provides as follows:
"Article 11. Liquidated Damages. In the event Dealer purchases ineligible potatoes or potatoes of an ineligible grower or pays for potatoes less than the applicable support price or fails to comply with directions of CCC to withhold certain potatoes from market, or sells ineligible potatoes belonging to another person or sells potatoes belonging to an ineligible grower, the parties hereto agree, in view of the difficulty of ascertaining the exact damages suffered by CCC as a result of such actions, that such damages shall be $3.00 per hundredweight or fraction thereof of potatoes so purchased or sold and that Dealer will pay said amount to CCC, as compensation and not as a penalty. Inasmuch as payment of $3.00 is not intended to take the place of any obligation to Dealer to refund to CCC any monies which he collected without being entitled thereto, this provision for liquidated damages or payment of such damages shall not preclude or invalidate claims of CCC for such refunds. Neither shall this provision exclude any other relief, at law or in equity, to which CCC may be entitled apart from its claim for damages."

The New Jersey cases state the principle substantially in accordance with the test quoted.[2]

■ The Trial Court found as a fact that there was no proof of actual damage suffered by the plaintiff as a result of defendant's breach of contract. This fact is not controlling. If a provision for liquidated damages is upheld the fact that actual damage did or did not occur or was not proved to have occurred does not prevent the recovery of the stipulated sum. There is some dissent on this point, but the statement just made represents the great weight of decided cases.[3]

The majority of the Supreme Court in Priebe & Sons, Inc. v. United States, cited above, refused enforcement of one of the provisions for liquidated damages in a contract made by the United States through the Department of Agriculture pursuant to the Lend-Lease Act. That decision binds us and this case is to be decided within the limits set by it. The majority pointed out that the law does not today look with disfavor upon liquidated damages provisions in contracts and cited with approval the Restatement of Contracts quoted above. It also said that such provisions "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts." It is also pointed out that the provisions are to be judged as of the time of making the contract.

In the Priebe case the party contracting with the government was to deliver dried eggs after a given date as specified. It was also to have the eggs inspected prior to delivery. There was a provision for liquidated damages for failure to deliver when required and also another and different provision for liquidated damages for failure to inspect as stipulated. The majority thought that it was "apparent that the only thing which could possibly injure the Government would be failure to get prompt performance when delivery was due." It had no doubt of the validity of the provision for liquidated damages for failure to deliver, but thought that the failure to inspect on time could not possibly cause any harm if delivery was made as agreed. Since the liquidated damage provision was for something which could not result in injury enforcement of it was refused.

We think that the provision in the case before us is comparable to the provision for liquidated damages for failure to deliver on time in the Priebe case. As to this provision the Court, as stated above, said that it had no doubt of the validity of the stipulation. Indeed, the decisions in United States v. Bethlehem Steel Company, 1907, 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731,[4] and Wise v. United States, 1919, 249 U.S. 361, 39 S.Ct. 303, 63 L.Ed. 647, are right on the point.

An interesting and helpful analogy to the situation in this case is found in a series of cases dealing with somewhat similar provisions in contracts between a cooperative marketing association and its members. These contracts made between the association and its members, provide that the member shall market a given crop exclusively with the association and stipulate an amount as liquidated damages in case the member sells elsewhere. To quote an English case: "If any member breaks his contract by not bringing his produce into the pool controlled by the selling agent * * * he may cause damage to the association and its members which, while very substantial, will be difficult to value precisely." English Hop Growers, Ltd. v.

---

2. Borden Co. v. Manley, Sup.Ct.1942, 127 N.J.L. 461, 23 A.2d 281; 218–220 Market Street Corp. v. Krich-Radisco, Inc., E. & A.1940, 124 N.J.L. 302, 11 A.2d 109; Monmouth Park Ass'n v. Wallis Iron Works, E. & A.1893, 55 N.J.L. 132, 26 A. 140, 19 L.R.A. 456.

3. United States v. Bethlehem Steel Co., 1907, 205 U.S. 105, 27 S.Ct. 450, 51 L.

Ed. 731; Stephens v. Essex County Park Comm., 3 Cir., 1903, 143 F. 844, certiorari denied, 1906, 201 U.S. 648, 26 S.Ct. 762, 50 L.Ed. 904; In re Lion Overall Co., Inc., D.C.S.D.N.Y.1943, 55 F.Supp. 791; Note, 34 A.L.R. 1336 (1925).

4. This case is almost exactly illustration 7 given to Section 339 of the Restatement of Contracts.

Dering, [1928] 2 K.B. 174, 182. And as Mr. Packel says in his book on cooperatives:[5] "More significant than the uncertainty of damages is the fact that the whole program of the cooperative may be destroyed and rendered abortive if such contracts are not carried out." We have had a large number of court decisions involving the recovery of liquidated damages for breach of an agreement such as described. Where the amount stipulated for is not outrageously high, the agreements have been pretty generally upheld.[6]

In dealing with some matters pertaining to governmental activities, the question of ascertaining how much pecuniary loss is caused by failure of one contracting with the government to keep his promise is especially difficult. If the contract is for the sale of 10 gross of pencils and the seller defaults the buyer may no doubt buy comparable pencils elsewhere. The measure of damages will be the difference between the contract price and what the buyer had to pay to get his pencils, whether the buyer is government or private citizen.

But how much damage could accrue to the Spanish government because a shipyard failed to deliver, at the time agreed upon, four torpedo-boat destroyers? This question was involved in testing the validity of a provision for liquidated damages for delay in the House of Lords decision in Clydebank Engineering and Shipbuilding Co., Ltd. v. Castaneda.[7] How could the damages be accurately determined? As Lord Halsbury said in an opinion upholding the provision, at page 11, "* * * in order to do that properly and to have any real effect upon any tribunal determining that question, one ought to have before one's mind the whole administration of the Spanish Navy * * *."

That type of consideration is applicable here. The United States went into the support of potato prices for the 1947 crop. With the wisdom of the project the Court is not concerned. It was authorized by the legislative department of the government and the Commodity Credit Corporation was used as the instrument by which the program was to be carried out. It was certainly not to make money for the United States as a corporate entity. It cost money; it did not make money and was not intended to.[8] It was to accomplish a public purpose deemed to be important. Defendant entered into the contractual relations voluntarily; his obligations under it were clearly stated. He broke the agreement.

The sum stipulated as liquidated damages was $3.00 per hundredweight. This was not an unduly large amount. In the record is a list of the vouchers submitted and payments made by the CCC to the defendant company under the 1947 contract. The rate per hundredweight got as high as $2.65, and sometimes it dropped down to $1.12½ but out of 183 payments made 137 were for $2.45 or more per hundredweight. If the amount specified had been highly excessive we might have had a situation where the liquidated damage clause was to operate in terrorem as the majority thought the damages for delay in certification operated in the Priebe case. But here the amount is close enough to the general price range to take that element out of the case.

█ We think the provision for liquidated damages in the contract was not an unreasonable one. The situation is comparable to the cooperative association cases and to those upholding stipulated damages for delay in government contracts. The amount is not so high as to provide a penalty, but is a reasonable pro-

5. Packel on Cooperatives 155 (2d ed. 1947).

6. Anaheim Citrus Fruit Ass'n v. Yeoman, 1921, 51 Cal.App. 759, 197 P. 959; Proodian v. Plymouth Citrus Growers Ass'n, 1943, 152 Fla. 684, 13 So.2d 15; Brannan v. Ohio Poultry Producers Ass'n, 1927, 27 Ohio App. 426, 162 N.E. 453.

But cf. Olson v. Biola Co-op. Raisin Growers Ass'n, 1949, 33 Cal.2d 664, 204 P.2d 10, 12 A.L.R.2d 112. See Note, 12 A.L.R.2d 130 (1950).

7. [1905] Appeals Cases 6.

8. The cost to the taxpayer in addition to the expenses of the CCC amounted to $88,751,000 by June 9, 1947.

vision for damages which are exceedingly difficult to anticipate beforehand or prove after breach. The defendant is liable according to his agreement for breaking a contract voluntarily entered into.

The judgment of the District Court will be reversed and the case will be remanded for further proceedings not inconsistent with this opinion.