UNITED STATES of America,
Appellant,

v.

Harry MOORE, Trustee of the Estate of
Billie Sol Estes, Bankrupt, Appellee.

No. 22371.

United States Court of Appeals
Fifth Circuit.

Sept. 21, 1966.

Rehearing Denied Oct. 19, 1966.

Lawrence R. Schneider, Alan S. Rosenthal, Attys., Dept. of Justice Washington, D. C., for appellant.

Allan L. Poage, El Paso, Tex., Thad Grundy, Houston, Tex., for appellee.

Before BELL and THORNBERRY, Circuit Judges, and FISHER, District Judge.

FISHER, District Judge:

The District Court for the Western District of Texas affirmed the decision of the referee in bankruptcy, granting certain motions for partial summary judgment filed by the trustee of the estates of the Estes brothers, Billie Sol

244

Estes and Bobby Frank Estes, bankrupts.

The claims of the government alleged, in part, that the bankrupts were indebted to the United States for certain penalties which had been assessed against them by the Commodity Credit Corporation pursuant to Section 346(a) of the Agricultural Adjustment Act, as amended, 7 U.S.C. § 1346(a),[1] resulting from the production of cotton in excess of the allotments applicable to their farms.

Trustee for bankrupts' estates filed a motion with the bankruptcy referee for partial summary judgment against the government on the allegation that the cotton marketing quota penalties constituted "penalties" within the meaning of Section 57(j) of the Bankruptcy Act, 11 U.S.C. § 93(j),[2] and, therefore, could not be allowed in the bankruptcy proceedings. The referee granted the trustee's motion, and the district court affirmed on a certificate of review.

The government filed this appeal seeking a reversal of the district court judgment because of alleged error in granting the trustee's partial motion for summary judgment determining that cotton marketing quota penalties [which had been assessed against the bankrupts for producing cotton in excess of their allotments] constituted "penalties" within the meaning of Section 57(j) of the Bankruptcy Act, and that, therefore, the claims based thereon were neither allowable nor dischargeable in bankruptcy.

Further, the government seeks reversal on a second point: that even if the cotton marketing quota penalties are held to be "penalties" within the meaning of Section 57(j), the government's claims are allowable in bankruptcy to the "amount of the pecuniary loss sustained by the act, transaction or proceedings out of which the penalty or forfeiture arose." Thus, it is argued, the referee and the trial court erred in not permitting proof of actual "pecuniary" loss sustained by the government, and in granting the trustee's motion for summary judgment.

The government construes Section 57 (j) to be applicable only if the penalty imposed against the bankrupt is of a punitive nature. Simonson v. Granquist, 369 U.S. 38, 42, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962) is cited as authority for this proposition.

The position of the government is that cotton marketing quota penalties mentioned in Section 346(a) of the Agricultural Adjustment Act, the marketing quota penalty involved in this case, are not punitive in nature but are actually a civil debt and therefore should not be disallowed under Section 57(j) of the Bankruptcy Act, citing the cases of Usher v. United States, 4th Cir. 1944, 146 F.2d 369; Miller v. United States, 6th Cir. 1957, 242 F.2d 392; United States v. Stangland, 7th Cir. 1957, 242 F.2d 843; United States v. Biehunko, 55 F. Supp. 706 (S.D.Tex.1944).

In support of its argument that said penalties are actually civil debts and not punitive measures, the government compares said penalties with customs duties, saying that the imposition of customs duties is designed to curtail importation, and that the assessments on excess cotton production are designed to discourage such production by making it less profitable.

Also, the government points to the fact that the cotton marketing quota assessments have been held by the Internal Revenue Service to be "deductible

1. 7 U.S.C. § 1346(a): "Whenever farm marketing quotas are in effect with respect to any crop of cotton, the producer shall be subject to a penalty on the farm marketing excess at a rate per pound equal to 50 per centum of the parity price per pound for cotton as of June 15 of the calendar year in which such crop is produced."

2. 11 U.S.C. § 93(j): "Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose * * *."

from gross income * * * as ordinary and necessary expenses incurred in carrying on * * * [the business of farming];" I.T. 3530, 1942–1 Cum.Bull. 43, whereas penalties paid for violation of statutes are not deductible for income tax purposes. Commissioner of Internal Revenue v. Longhorn Portland Cement Co., 5th Cir. 1945, 148 F.2d 276, 277, certiorari denied, 326 U.S. 728, 66 S.Ct. 33, 90 L.Ed. 432, 1945; Burroughs Building Material Co. v. Commissioner of Internal Revenue, 2nd Cir. 1931, 47 F.2d 178, 179; Great Northern Ry. Co. v. Commissioner of Internal Revenue, 8th Cir. 1930, 40 F.2d 372, 373, certiorari denied, Great Northern R. Co. v. Burnet, 282 U.S. 855, 51 S.Ct. 31, 75 L.Ed. 757, 1930.

Further, the government says that Congress never viewed cotton marketing quota assessments as being penal in nature. The Agricultural Adjustment Act of 1964, P.L. 88–297, 78 Stat. 173, which amended the Agricultural Adjustment Act of 1938 by adding Section 349 thereto, provides for damages—should a farmer exceed the "export market acreage"—in an amount which the Secretary determines * * * will approximate the amount payable on excess cotton under Section 346(a) of the Agricultural Adjustment Act, as amended. Thus, by analogy the debt for overproduction of cotton under said provision [Section 346 (a)] is said to be in the nature of liquidated damages, and the courts have held that claims for liquidated damages do not fall within the prohibition of Section 57(j) of the Bankruptcy Act. United States v. Walkof, 2nd Cir. 1944, 144 F.2d 75, 154 A.L.R. 1250; United States v. Paddock, 5th Cir. 1950, 180 F.2d 121.

Further, the government urges that the referee and the district court cannot rely upon Rodgers v. United States, 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3, for the proposition that the penalty paid for overproduction of cotton is analogous to the criminal law since Section 57(j) of the Bankruptcy Act was not involved in

that case, and, further, since that court decision was overruled by legislative action amending the allotment provisions allowing interest on cotton marketing quota penalties.

The government contends that the amendment [3] to provide specifically for the payment of interest on cotton marketing quota penalties indicated that Congress considered such penalties to be a civil debt rather than punitive in nature.

The government concludes that even though the district court erred in upholding the referee's determination that the cotton marketing quota penalties are "penalties" within the meaning of Section 57(j), the government claims for penalties are allowable in bankruptcy, to the amount of the "pecuniary" loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose.

█ The contentions concerning the applicability of Section 57(j) have been carefully considered. We hold that, singly or collectively, they are without merit. Whether the cotton marketing quota penalty is labeled punitive or civil is immaterial in view of the reasoning of the Supreme Court in Simonson v. Granquist, supra, where the court rejected the contention of the government that federal tax penalties secured by liens were recoverable from the estate of a bankrupt. The court said:

"We think, however, that the language of § 57j is itself a more dependable guide to its meaning * *. Unquestionably that language is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that. For it plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the

---

3. Act of August 29, 1949, P.L. 272, 63 Stats. 670, 674–675, 7 U.S.C. 1346(c).

broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors."

 Our Court had previously concluded that § 57(j) was designed to protect general creditors against a reduction of their dividends from a bankrupt estate by reason of penalties owing by the bankrupt to the United States or one of the States. United States v. Phillips, 5th Cir. 1959, 267 F.2d 374. See also 3 Collier on Bankruptcy, p. 346.

In Rodgers v. United States, supra, the Supreme Court determined that pre-judgment interest might not be awarded on cotton marketing quota penalties. The court pointed out that interest is denied on criminal penalties for the reason that such penalties are not assessed for the purpose of raising revenue. The following language of the court is pertinent:

"Viewed in light of these principles, we think that the question of interest on the penalties provided in the Agricultural Adjustment Act on non-co-operators should be governed by the rule previously applied by this Court to criminal fines. Although Congress neither wholly prohibited nor made it a crime for a farmer to market cotton in excess of his quota, still it imposed sanctions upon non-cooperators analogous to those of the criminal law. The purpose of Congress in requiring payment of penalties into the Federal Treasury for marketing above the allotted amount was not to raise revenue for the Government's financial advantage but to deter farmers from planting and marketing more than their quotas. * * *"

The government contends that Rodgers v. United States was overruled by Congress when the statute was amended to require payment of interest on such penalties. Act of August 29, 1949, 7 U.S.C.A. § 1346(c). It is argued that the inference from this amendment is that Congress considered such penalties to be in the nature of a civil debt rather than a punitive assessment. The amendment, however, does not convert what is expressly labeled as a penalty into something short of a penalty. And as the Supreme Court said in Simonson v. Granquist, the language of § 57(j) bars all penalties except, of course, insofar as a pecuniary loss may be established.

We, therefore, hold the "penalty" for excess production of cotton mentioned in Section 346(a) of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C. § 1346(a), is a "penalty" that comes within the intendment of Section 57(j), 11 U.S.C. § 93(j).

Having concluded that Section 57(j) is applicable, we are confronted with the second proposition that the lower court erred in granting the motion for summary judgment because the government was not given the opportunity to make proof of any "pecuniary" loss sustained.

 The referee and the court below stated that the reason for granting the motion for summary judgment denying the government the opportunity to prove pecuniary loss was the failure of the government to specifically allege such loss in the proof of claim. We hold that the referee and the court below erred in this respect. The government claims an amount equal to the market penalties, and to the extent that this sum does not represent pecuniary loss it is a penalty. The statute permits proof that a portion of a penalty represents pecuniary loss and recovery of any such amount. Cf. United States v. Birmingham Trust & Savings Co., 5th Cir. 1919, 258 F. 562, cert. den., 251 U.S. 550, 40

S.Ct. 56, 64 L.Ed. 410 (1919); In re Abramson, 2nd Cir. 1914, 210 F. 878; and see 3 Collier on Bankruptcy, 351 (14 ed., 1964); 2 Remington on Bankruptcy 431 (1956 rev.) The fact that the market penalty is found to be a "penalty" under § 57(j) as a matter of law should not preclude proof that a part of the claim actually represents a pecuniary loss.

The trustee contends that the government cannot establish the amount of any such loss with the requisite degree of certainty. This is a question for consideration on remand. It is not ripe for decision here. The government is entitled to the opportunity of proving any pecuniary loss sustained. The case must be reversed and remanded on this issue.

The holding that cotton marketing quota penalties constitute a penalty within the meaning of § 57(j) of the Bankruptcy Act is correct, but the court erred in denying the government the opportunity of proving the pecuniary loss, if any, sustained from the conduct of the bankrupt in the penalty transactions.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.