117 F.2d 326 (1941)
In re OSCAR NEBEL CO., Inc.
PORRECA
v.
FREEMAN.
No. 7475.
Circuit Court of Appeals, Third Circuit.
January 24, 1941.
*327 Bernard R. Cohn, of Philadelphia, Pa., for appellant.
Henry Arronson and Harry A. Rutenberg, both of Philadelphia, Pa., for appellee.
Before BIGGS, CLARK, and GOODRICH, Circuit Judges.
GOODRICH, Circuit Judge.
This is an appeal from an order entered in the District Court for the Eastern District of Pennsylvania upon the report of a Special Master.
The litigation turns upon the rules of law applicable to the consequences of nonperformance of a contract entered into on November 20, 1937, between the appellant as buyer and the appellee as seller. The seller agreed to sell and deliver to the buyer certain machines in the seller's factory at Hatboro, Pa., delivery to be as they stood upon the floor and removal to be at the buyer's risk. The buyer agreed to pay $5,000 down and another $5,000 the following month and to pay the $90,000 balance at the rate of $2,000 for each machine as delivered, stipulating, however, that he was to take not less than eight machines each month beginning January, 1938. Another clause of the contract provided that "The purchase of the said machinery and equipment is made subject to delivery free from any labor difficulties". It was agreed that the first $10,000 payment thus provided for was to constitute liquidated damages to be retained by the seller in case of default by the buyer.[1]
The buyer paid the first $10,000 as provided in the contract. During the month of January, 1938, he neither paid nor tendered anything at all and upon the first of February, 1938, the seller notified the buyer that the seller claimed "the moneys heretofore deposited" as liquidated damages under the provisions of the contract. It is this $10,000 which the buyer now seeks to have allowed as a claim in the reorganization proceedings of the seller. Although the question arises in a reorganization proceeding the rights and liabilities of the parties turn upon the law of Pennsylvania where all the operative facts occurred.
The first law question in the case is whether there was a substantial breach of the contract by the buyer. This question calls for an affirmative answer. The contract was performable over a period of four months. The entire first month went by without performance, tender of performance or indication of willingness of performance by the buyer. The breach was substantial in any case, the more so when it occurred at the beginning. Restatement, Contracts § 275. Since there was a substantial breach by the buyer the seller was justified in refusing to go further and making a claim for damages. Pittsburg Steel Foundry v. Pittsburg Steel Co., 1909, 223 Pa. 430, 72 A. 813; G. B. Hurt, Inc., v. Fuller Canneries Co., 1920, 269 Pa. 85, 112 A. 148.
The second question in the case is whether this $10,000 may be retained by the seller as liquidated damages, as stipulated in the agreement. The question of whether the stipulation for liquidated damages is to be upheld or whether it is to be disregarded as a provision for a penalty does not turn upon the language used by the parties. In general, the question is whether the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach where that harm is incapable or very difficult of accurate estimation. Restatement, Contracts § 339. General statements to the effect that a penalty will not be enforced *328 are true but of little help upon a particular set of facts. The amount in this case seems reasonable. It was 10% margin upon a $100,000 transaction. There was no testimony by either party as to the difficulty in measuring damages. Therefore, we do not know, nor have we means of knowing, whether there is such a standardized market for used machinery in the knitting industry as to provide a definite sum for the usual measure of damages in a breach of a contract to sell, that is, the difference between the contract price and the market price, plus special damages which the seller has suffered. In the light of subsequent events the stipulation proved to be a fairly accurate measure. The machines in question were later sold to another buyer for $85,000. Allowing some margin for the value of their use by the seller up to the period of this second sale, the sum stipulated seems close to the actual damages suffered. Either a priori or by experience the measure of damages stipulated for is a reasonable one and it will be upheld as a legitimate stipulation for liquidated damages. The buyer's point concerning the seller's diligence in resale drops out of the case in view of the upholding of the stipulation as to liquidated damages.
The result that the seller is entitled to keep the portion of the purchase price paid by the defaulting buyer may be supported upon another ground. The Special Master found, on the evidence, that the seller was ready, able and willing to perform. That the buyer was in default there is no doubt. It is the law in Pennsylvania that a party to a contract who is, himself, in default cannot recover against the other who is not in default for payments made upon the contract. Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co., 1927, 289 Pa. 569, 137 A. 807; Dluge v. Whiteson, 1928, 292 Pa. 334, 141 A. 230.
The appellant contends that the seller lulled him into a false sense of security to his detriment. The basis of this claim is that during the month of January, 1938, there were conversations between the buyer and the seller concerning the buyer's ability to perform his part of the contract. We do not find that there were made on behalf of the seller any representations or promises which misled the buyer, much less misled him to his detriment. There were conversations and there were suggestions which, if followed out, would have enabled the buyer to take over the machines in the mill and carry on manufacturing there. But they came to nothing and the buyer was not misled thereby.
The final point the buyer makes is that there was such impossibility of performance as to excuse the buyer from default. The argument upon this point is not clear-cut and we are in some doubt whether the buyer contends that it was impossible for him to perform or whether he contends that the seller had made it impossible for the seller, himself, to perform. As noted above there was a clause in the contract stating that the purchase of the machinery was made subject to delivery free from labor troubles. Technically, this presents no difficulty because delivery by the seller was to be made from the floor of his factory. There had previously been some labor difficulties at the seller's plant. Thereafter the seller and the labor organization had made an agreement effective up to September 1, 1938. There was testimony that the buyer and his agents were fully aware of this agreement and that it was stated by the buyer's "own people" that "they could handle it with the union and get a more favorable deal." There was no labor difficulty during the time when this contract was to have been carried out. We find no evidence that performance of the contract was rendered impossible by "labor difficulties", or anything else except the buyer's inability to get the money to perform. The Master has found that the seller was ready, able and willing to perform his part of the contract and that conclusion is supported by ample testimony.
The order of the District Court is affirmed.
NOTES
[1] The wording of this paragraph is as follows: "The deposit of $10,000.00 is to be retained by the Seller and in the event of any default on the part of the Buyer of any of the terms hereinafter mentioned shall constitute the liquidated damages sustained by the Seller, it being understood, however, that this sum may be credited as a final payment by the Buyer after the sum of $90,000.00 as herein provided, has been paid."