## SANDBERG v. RUDD–MELIKIAN, Inc.
### Civ. A. 9432.

United States District Court
E. D. Pennsylvania.
March 6, 1951.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiff.

Carlile E. King, John A. Kenney, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

By a written contract dated September 19, 1947, the plaintiff was appointed a distributor for the defendant and agreed to purchase 200 of the defendant's automatic coffee vending machines during the first 12 months of the agreement, at a price of $698. per machine and to take and pay for not less than 15 machines per month. The contract

also provided that the plaintiff would pay, simultaneously with its execution, a 10% deposit "on all machines it has agreed to purchase from Corporation during the first yearly term of this agreement * * * and such deposit is returnable to Distributor, if, and only if, Corporation fails to fulfill its obligations hereunder." The plaintiff made the deposit which amounted to $11,875.

The defendant shipped 15 machines on sight draft bill of lading to the plaintiff in September of 1947, for which the plaintiff paid $9,689.53. Although not so expressly stated in the contract, it was clearly the intention of the parties as evidenced by their course of dealing under the contract that the plaintiff should receive credit against his original deposit, at the rate of 10% of the price of each machine received and paid for by him. Actually, as a result of some adjustment between the parties not thoroughly explained, a credit was allowed him on the purchase of the 15 machines at the rate of $62.50 per machine.

Later, in October, the contract was modified by a second agreement in which the plaintiff agreed to pay for the machines by certified check two days in advance of shipment instead of on a sight draft bill of lading basis, as provided in the original contract.

About November 15, 1947, the defendant notified the plaintiff that it was ready to ship his second monthly quota of 15 machines. The plaintiff offered to take them on a sight draft bill of lading basis but, after inquiry at the bank, the defendant refused to ship on any basis other than the agreed one, namely, the plaintiff's certified check in hand in advance of shipment. The plaintiff never gave such check and no more machines were delivered.

This suit was brought by the plaintiff to recover the balance of the money deposited by him at the time of the execution of the contract. By stipulation, certain credits, arising out of other transactions, have been allowed and the balance which the plaintiff now claims is $7,498.15.

█ It is unnecessary to discuss in detail the plaintiff's claim that the 15 machines shipped to him in September were defective.

There is no doubt that he and his vendees had a great deal of trouble to get them operating satisfactorily. Part of the difficulty was no doubt due to faulty installation by inexperienced employees, but a great deal of it was, on the testimony of the defendant's own witness, due to defective parts, and it may well be that the defects were serious enough to have justified the plaintiff in rescinding the contract during the early part of his operations. However, he waived whatever rights in that regard that he may have had. With the defendant's assistance, he made repairs and adjustments and on November 4 wrote to the defendant "We have every machine now in working order except one, where apparently the wiring has been crossed." Thereafter he made no effort to rescind but appears to have been perfectly willing to accept the November quota, provided he could get better terms for payment than those to which he had bound himself by the modified contract.

██ The result is that the plaintiff is now in default. The defendant has been at all times ready, willing and able to perform. "It is the law in Pennsylvania that a party to a contract who is, himself, in default cannot recover against the other who is not in default for payments made upon the contract." In re Oscar Nebel Co., Inc., 3 Cir., 117 F.2d 326, 328. See also Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co., 289 Pa. 569, 137 A. 807. In the Nebel case the court put the decision on two grounds, (1) the rule as quoted and (2) its finding that the down payment could be upheld as a legitimate stipulation for liquidated damages. I am inclined to think that the provision of the contract in this case for retention of the down payment could be sustained as an agreement for liquidated damages, but it is not necessary to the decision. Under the broader rule stated by the court as the law of Pennsylvania and this Circuit, judgment may be entered for the defendant.

The defendant's counterclaims, except so far as they resulted in the credits allowed by stipulation, are not supported by any competent testimony and will be dismissed.

Judgment may be entered for the defendant.