**In re Carlton MITCHELL t/a Carl's Deli, Inc., Bankrupt.**

**Bankruptcy No. 78–1021K.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Nov. 26, 1980.

Elisha B. Kizer, Philadelphia, Pa., for bankrupt.

Abe Lapowsky, Philadelphia, Pa., for James E. Harmon.

James J. O'Connell, Philadelphia, Pa., trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before this court is an application to recover a deposit paid to the trustee by James E. Harmon for the purchase of a

Pennsylvania Liquor Control Board Eating Retail Dispenser License from the Bankrupt. Because we find that neither the contract of sale nor the case law supports the position of the applicant, the application will be denied.[1]

At a hearing on the trustee's application to sell the license, Harmon was the highest bidder at $4,400.00,[2] and this court ordered that the trustee was authorized to sell the right, title and interest in the license for that amount.[3] Harmon then deposited $440.00 with the trustee (10% of the sales amount) toward the purchase of the license.[4]

Harmon proceeded to make application to the Pennsylvania Liquor Control Board to effect a transfer of the license.[5] However, in order for the Board to allow such a transfer, the Board requires the existence of a location to which the license is to attach. Since Harmon had failed to obtain such a location, the Board rejected the application for transfer.[6] The trustee was not contacted by Harmon for over one (1) year after the deposit was made.[7] The trustee then applied for and was granted an order [8] vacating the order to sell the liquor license to Harmon. Harmon now makes claim to the $440.00 deposit and seeks an order directing the trustee to refund that deposit.

The issue presented is whether a buyer, who has defaulted on an agreement of sale may recover the money paid as a deposit to the trustee who was not in default.

In *United–Buckingham Freight Lines v. Riss and Company*, 241 F.Supp. 861 (D.Col. 1965), plaintiff–buyer sought to recover a $200,000.00 deposit for the purchase of certain common carrier operating rights from defendant–seller. The Interstate Commerce Commission entered a final order denying and refusing to approve the original transaction, and the court granted the plaintiff's motion for summary judgment. In that case, the contract clearly provided that: "This transaction is subject to approval of the Interstate Commerce Commission .... Both parties agree to promptly execute all required applications for the purpose of securing such approval...."

The court concluded that: "Clearly, ICC approval of the contract was a condition precedent, and ... both parties promised to use their best efforts to cause the condition of ICC approval to occur."

In the instant case, plaintiff alleges that if Harmon could not obtain a location to which the license was to attach, then the purchase agreement was to be vacated.[9] We are not aware of any evidence presented which would serve to confirm that allegation or which would support the existence of a condition precedent, such as the one spelled out in *United–Buckingham, supra.*

Since apparently there were no provisions made affecting rights regarding deposit money in the event of default, this court must look to the laws of Pennsylvania to determine whether Harmon is entitled to a refund of his deposit.

*Atlantic City Tire & Rubber Corp. v. Southwark Foundry & Machine Co.*, 137 A. 807, 289 Pa. 569 (1927) involved a suit by a buyer of machinery to recover back installments paid, though he was the one who breached the terms of the contract. The general rule in Pennsylvania, as stated by the court, is that:

> The party who has advanced money, ... and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to

---

1. This Opinion constitutes Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 752.

2. Notes of testimony, p. 6 (December 5, 1978).

3. Order dated December 5, 1978.

4. Notes of testimony, p. 3 (April 29, 1980).

5. *Id.*

6. *Id.*, at pp. 3–5.

7. See Application of the Trustee to Vacate Order of Court Selling Liquor License–Legal Document Number 38.

8. Order dated December 27, 1979.

9. Notes of testimony, p. 5 (April 29, 1980).

proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced.... *Id.* 137 A. at 809.

■ It is the law of Pennsylvania that a party to a contest who is, himself, in default cannot recover against the other who is not in default for payments made upon the contract. *In re Oscar Nebel Co.*, 117 F.2d 326, 328 (3rd Cir. 1941).

■ The trustee avers that he knows of no action on the part of the applicant to achieve a transfer of the license. Harmon did not present any evidence showing that the sales agreement was subject to a condition precedent, i. e., approval of the transfer by the Pennsylvania Liquor Control Board.

The trustee neither knew nor had reason to know, that the license could not be transferred without a location to attach to. Furthermore, there was no duty on the part of the trustee to insure that the buyer possessed a location, and it was admittedly Harmon's responsibility to obtain the location.[10] Because there was no corresponding duty upon the trustee, there was no default on his part. The trustee remained ready, willing and able to perform. Due to the failure of Harmon to pay the balance for the license, the trustee was forced to seek another purchaser, and also was obliged to expend estate funds in the amount of $570.00 to renew the license (which he would not have had to do if the agreement had been complied with).[11]

Accordingly, the application of James E. Harmon for the return of the deposit paid to the trustee for the sale of a Pennsylvania Liquor Control Eating Retail Dispenser License is denied.

10. Notes of testimony, p. 5 (April 29, 1980).

11. See Trustee's Answer to Application for Return of Deposit (Legal Document No. 42).