**(July 23, 1973)**

■ CITY OF RYE, Appellant, v. PUBLIC SERVICE MUTUAL INSURANCE COM-.PANY et al., Respondents.— In an action *inter alia* to recover upon a surety bond, plaintiff appeals from an order of the Supreme Court, Westchester County, dated October 26, 1972, which denied its motion for summary judgment. Order affirmed, with $20 costs and disbursements. No opinion. Shapiro, J. (concurring). In this action to recover damages in the sum of $100,000 from defendant Public Service Mutual Insurance Company on its surety bond and against the other defendants on an agreement to pay a stipulated charge of $200 per day for each day of delay in the construction and completion of certain buildings, the plaintiff, the City of Rye, appeals from an order which denied its motion for summary judgment. I agree that the order should be affirmed, but, in addition, I would dismiss the complaint. The nonsurety defendants, Marcel Weiss, Warwick Village, Inc., Milton Harbor Company and 720 Milton Road, Inc., were engaged in the construction of a group of 12 luxury co-operative apartment houses on a 12-acre tract in Rye based on building permit trom the City of Rye received on January 31, 1966. In 1964 the developers applied to the Planning Commission of the City of Rye for approval of a variable height apartment development of three two-story shoreline buildings, three four-story buildings and underground garage and six two-story peripheral buildings. Such a development was permitted in an RA-4 zone, limited to a maximum height of 45 feet for all apartment buildings and an average height of 30 feet for all the buildings. The nonsurety defendants' development was approved by a Planning Commission resolution on September 8, 1964 on condition that all work should be completed "in conformity with plans approved by the Planning Commission and in conformity with all applicable state, county and city regulations prior to the issuance of a certificate of occupancy." On September 14, 1965 the Planning Commission modified its year-old resolution of approval to provide: "No certificate of occupancy shall be issued for any building until all buildings are completed or until a bond sufficient to guarantee completion of the remainder of the buildings has been filed with the City." Earlier, on June 18, 1965, the developers had applied for a building permit for nine two-story buildings and three four-story apartment buildings and underground garage. As above stated, a building permit was granted on January 31, 1966. Temporary certificates of occupancy were issued for three buildings, K, L and M, on April 14, 1967 and reissued on July 14, 1967 and October 14, 1967. Temporary certificates of occupancy were issued for the four-story buildings on December 29, 1967. Final certificates of occupancy were issued for all of these seven buildings on October 29, 1968. On the day before the issuance of the temporary certificates of occupancy on the four-story buildings, defendant Weiss signed a letter agreement which is the basis of the city's action, in which, "in order to induce" the city "to deliver a temporary Certificate of Compliance with respect to" the completed four-story buildings (collectively, the "Island and Garage Buildings"), he covenanted that he would deposit a surety bond of $100,000, to be held by the city as security for the commencement of construction of the remaining buildings, called the peripheral buildings; no later than April 1, 1970 or their completion within one year after that date. The agreement provided for the

imposition of a charge on Weiss "for the benefit of the City of Rye of $200 per day until construction of the Peripheral Buildings is commenced or completed, as the case may be," with the aggregate of such daily charges "limited to the amount of the bond [$100,000]." The surety bond sued on was issued in conformity with that agreement. At the time of the initiation of this action (in November of 1971), more than 500 days had elapsed since April 1, 1970. The city therefore sued for the full amount of the bond. The answer of the nonsurety defendants consisted only of two defenses. The first was that the agreement embodied in the letter of December 28, 1967 was "exacted" without statutory or other legal sanction, was without any lawful consideration and constituted a penalty not related to actual damage and was therefore void. The second defense, that of economic duress, is not being urged and is therefore not being considered. It appears from the brief of the developer defendants, though it is not in the record, that construction on the peripheral buildings was begun after "an acknowledged delay of about three years." The surety defendant's answer admitted execution and delivery of the bond and that this defendant had been informed by the plaintiff, on March 24, 1970, that by a letter dated March 13, 1970 Weiss had informed it that he would not start construction of the peripheral buildings until the Fall of 1970. This defendant then pleaded the same two defenses raised by the nonsurety defendants. It also pleaded two additional affirmative defenses and cross claims against its codefendants to indemnify it against any loss it might sustain on the bond. The principal issue in this case is whether the agreement for the giving of the bond was a valid agreement to guarantee the completion of the peripheral buildings, based on a lawful consideration, or, in any case, a valid bond, or whether it was, in the alternative, a valid agreement to pay liquidated damages of $200 per day for each day of delay. A subsidiary issue is the claim made by the nonsurety defendants (in their brief) that they are entitled to summary judgment dismissing the complaint, under subdivision (b) of CPLR 3212, because, as a matter of law, they have conclusively shown that the bond is invalid, as a penalty bond. It has long been the law in this State that if the damage presumed to result from nonperformance is uncertain and incapable of exact ascertainment, the sum fixed by the parties is deemed to be liquidated damages and is recoverable as such, unless the sum stipulated to be paid by the defaulting party is grossly disproportionate to the presumable or probable damage, or to the readily ascertainable loss. If the latter be the case, the courts "will treat it as a penalty and will relieve; on the principle that the precise sum was not of the essence of the agreement, but was in the nature of a security for performance" (*Ward* v. *Hudson Riv. Bldg. Co.*, 125 N. Y. 230, 235). In *Priebe & Sons* v. *United States* (332 U. S. 407), Mr. Justice Douglas, rejecting as invalid a claim for liquidated damages under a federal contract on the ground that the contract provision for liquidated damages could not possibly be a reasonable forecast of just compensation for the damages caused by a breach of contract, said (p. 413) : "It might, as respondent suggests, have an *in terrorem* effect of encouraging prompt preparation for delivery. But the argument is a tacit admission that the provision was included not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance. It is well-settled contract law that courts do not give their imprimatur to such arrangements. See *Kothe* v. *Taylor Trust*, [280 U. S. 224] *supra*; Restatement, Contracts § 339. All provisions for damages are, of course, deterrents of default. But an exaction of punishment for a breach which could produce no possible damage has long been deemed oppressive and unjust. See Salmond & Williams on Contracts (2d ed. 1945) § 202."

The appellant in its brief concedes that one basis for its seeking the bond sued on was to establish "some penalty * * * to secure compliance within the time specified."* In an effort to establish that the agreement and the supporting bond on which it is suing is in fact a provision for liquidated damages rather than a penalty, the appellant argues that the failure of the nonsurety respondents to complete the project within the specified time would impose added costs on it (1) by requiring extra time and effort by city officials, employees and agencies to review, inspect and check the progress of the construction of the remaining buildings; (2) by causing inconvenience and annoyance to the public with resultant complaints by neighbors; (3) by extending the period during which the existing violation of the 30-foot maximum average height limitation for the project applicable under the zoning ordinance would exist; and (4) by diminishing the taxes received by the city, which would be based on the value of the completed buildings. Since the city officials, employees and agencies reviewing, inspecting and checking the progress of the construction of the remaining buildings are full-time employees whose number and salaries would not vary with the construction or nonconstruction of the nonsurety respondents' buildings, the claim of increased expense to the city from this source lacks merit and, in any event, such expenses bear no reasonable relationship to the penal sum of the bond. As for the annoyance to the public, this, too, is hardly a basis for any claim of damage by the city, for the processing of neighbors' complaints by city employees is, like the carrying on of inspections of buildings under construction, an ordinary everyday duty of full-time salaried city employees charged with that responsibility which can result in no compensable damage. The violation (temporary, presumably, even though somewhat prolonged) of the average height maximum not only resulted in no damage to the city, but, at most, gave rise to a cause of action to compel compliance. Never, so far as our research discloses, have any such considerations been held to be the basis for a damage claim. Finally, as to the claim for loss of increased taxes which might have resulted from speedier completion of all the buildings in the development, it must be noted that such a claim, like the claim for damages for violation of the maximum average height requirement, is made without citation of any authority to support it. If upheld, its corollary would be to validate the imposition on a landowner of a legal duty to improve his land by building on it to enhance the municipality's tax revenues, a rule of law which contradicts a basic concept of property rights — the right of an owner of real property to develop his land as he pleases, subject only to existing laws governing such development and to the police power which safeguards the public health, safety, morals and welfare, not the public treasury. It seems clear to me that none of the effects claimed by the city as the basis for the $200 per day demand because of delay under the agreement are in fact real and substantial damages. Hence, they cannot serve as a legal basis for the city's claim that the daily $200 obligation under the agreement represented an enforceable liquidated damage

---

* On page 28 of its brief the appellant says: "Obviously, although a bond is filed to secure faithful performance and a time is specified for the completion of the project, some penalty is required to secure compliance within the time specified. If this were not so, then builders or contractors could seriously obstruct and interfere with the use of highways and sidewalks by their excavations or constructions if they were permitted to delay, without any limitation or restriction, the completion of such projects. Whether or not the penalty be by a lump sum payment or a per diem charge, the purpose is the same, namely, to obtain compliance within the time specified."

(*Weinstein & Sons* v. *City of New York*, 264 App. Div. 398, affd. 289 N. Y. 741; *Kelly* v. *Board of Educ. of City of N. Y.*, 8 Misc 2d 1007, affd. 7 A D 2d 856, affd. 8 N Y 2d 764; *Parker-Washington Co.* v. *Chicago*, 267 Ill. 136; *Realworth Props.* v. *Bachler*, 33 Misc 2d 39). The provision in question would create a penalty pure and simple, which is unenforceable as repugnant to the policy of the law (12 Am. Jur. 2d, Bonds, § 8; 11 C. J. S., Bonds, § 27). This case does not come under the exception developed by the courts that there may be full recovery on a penal bond executed pursuant to a statute. In such a case, where a statute imposes a penalty for the doing or failure to do a particular act, the defense that the failure has not caused damage commensurate to the statutory penalty will not be sustained and the giver of the penal bond is liable for the full penalty specified when there is failure of performance (5 Williston, Contracts [3d ed., 1961], § 775). The appellant, relying on *Lyman* v. *Perlmutter* (166 N. Y. 410) and a number of out-of-State decisions, claims a right to recover under that doctrine. But *Lyman* v. *Perlmutter* dealt with a liquor tax bond specifically authorized by statute. The other cases cited dealt with statutorily authorized bonds or with bonds to insure performance by a date certain of a contract to construct a facility *for the public authority involved* where the default or delay in violation of the contract clearly involved damage to the public authority or to the general constituency of the public authority and not, as here, the temporary discomforts occasioned to nearby neighbors which are ordinarily attendant on any building project. In fact, the appellant, in its brief, concedes that " the bond involved herein is not the usual 'statutory ' bond referred to in some of the cases cited " by it and rests its claim of statutory authorization on the delegation of police power to cities, i.e., " legislative power to provide by local law for the preservation and promotion of the health, safety and general welfare of their inhabitants ". That provision, however, may not be stretched into making the bond here in suit a statutory bond. It seems clear, therefore, that the bond sued on here cannot be sustained either as a statutory bond or as a valid liquidated damage provision bond. Hence, the denial of the appellant's motion for summary judgment was proper. Having come to the conclusion that there is no basis for sustaining the appellant's claim under the bond, the question is whether we may grant summary judgment to the defendants although they made no cross motion for such relief at Special Term and consequently have no appeal, in that regard, before us. I believe we have and should exercise that power. CPLR 3212 (subd. [b]) provides in its last sentence that " If it shall appear that any party other than the moving party is entitled to summary judgment, the court may grant such judgment without the necessity of a cross-motion." The practice commentaries on CPLR 3212 (by Professor David D. Siegel in McKinney's Cons. Laws of N. Y., Book 7B, CPLR 3201–3400, p. 443) note not only that the language of the rule empowers the court, on a summary judgment motion by one party, " to grant it instead to his adversary " notwithstanding that the other party " did not ask for it by motion, cross-motion or even by request in his opposing papers," but also that " a searching of the record and a grant of summary judgment for the non-movant has also been known to take place on an appeal. See Wiseman v. Knaus, 24 A. D. 2d 869, 264 N. Y. S. 2d 331 (2d Dep't 1965)." In the cited case, this court, ruling on an appeal by a defendant from the granting of summary judgment against him, not only reversed the grant as against the plaintiff wife but granted summary judgment against her, saying (p. 870) : " accordingly, as to her, the defendant is entitled to summary judgment in his favor even in the absence of a cross motion for such relief ". (See, also, *Jelinek* v. *City of New*

*York,* 25 A D 2d 425; *Cutting Room Appliances Corp.* v. *Finkelstein,* 33 A D 2d 674; *Davis* v. *Shelton,* 33 A D 2d 707; *Freedom Discount Corp.* v. *McMahon,* 38 A D 2d 947.) For the foregoing reasons, the order appealed from should be modified and summary judgment granted to the respondents dismissing the complaint. However, for the purpose of achieving a definitive determination of this appeal, I concur for affirmance of the order. Hopkins, J. (dissenting). Three questions are before us: (1) whether the plaintiff was authorized to accept the bond in suit, (2) whether the bond is otherwise valid and (3) whether the amount of the bond is recoverable as liquidated damages. There is little dispute about the facts. As I view the litigation, it is concerned with the nature anad effect of the bond executed by the defendant Public Service Mutual Insurance Company, as the surety, and defendant Weiss, as the principal, and delivered to the plaintiff. The defendants other than the surety were developing from 1964 onward a co-operative apartment tract in the plaintiff municipality. The tract was divided into two parts: an area upon which the co-operative apartments were to be constructed and an area upon which six buildings (the peripheral buildings) were to be constructed. In 1967 the developer defendants applied for a temporary certificate of compliance for certain of the buildings and a permanent certificate of compliance for all of the co-operative buildings. At the time neither certificate was obtainable as of right, since all the buildings had not been completed — a condition of the project under the zoning ordinance of the plaintiff.[1] In order to induce the Building Inspector of the plaintiff to issue the certificates, the above-mentioned bond was executed for performance of certain obligations stated in a letter to the plaintiff, i.e., to commence construction of the peripheral buildings by April 1, 1970 and to complete the construction of such buildings by April 1, 1971. The bond provided that in default of the performance of the obligations the defendants surety and principal would be liable to the plaintiff in a sum not to exceed $100,000, subject to the terms of the letter, which called for a charge to be imposed on the defendant Weiss in the sum of $200 a day until construction of the buildings would be completed. As the buildings were not completed, the plaintiff is entitled to the total amount of the bond, unless any of the questions before us is answered in the negative. 1. The right of the plaintiff to accept the bond. Though no statute expressly authorizes a city to accept a bond upon the issuance of a certificate of occupancy, I do not think that the plaintiff city is barred thereby. A city is empowered broadly to adopt planning and zoning regulations (General City Law, arts. 3, 5-A; cf. *Baddour* v. *City of Long Beach,* 279 N. Y. 167). Here, the power to approve developments of the character under review was delegated to the Planning Commission; and the issued permit for the construction of the project was subject to the conditions laid down by the Planning Commission. As the project envisaged an average height of the buildings to be constructed, the Planning Commission prudently imposed the condition that no certificate of occupancy should be granted until all the buildings were completed or, in the alternative, that a bond be delivered to secure completion of the buildings. This condition was clearly within the competence of the plaintiff to require and it is worth noting that common-law bonds are generally exacted and enforced by municipalities (*Triple Cities Constr. Co.* v. *Dan-Bar Constr. Co.,* 285 App. Div. 299, 304, affd. 309 N. Y. 665; cf. *Constable* v. *National S. S.*

1. The resolution of the Planning Commission of the city dated September 14, 1965 provided that no certificate of occupancy for any of the buildings should be issued until all the buildings were completed or until a bond sufficient to guarantee the completion of the buildings would be filed.

*Co.*, 154 U. S. 51; *McClare* v. *Massachusetts Bonding & Ins. Co.*, 266 N. Y. 371). 2. The validity of the bond. The defendants do not raise on this appeal the issue of duress exercised by the plaintiff in requiring the bond. In any event, the record is plain that the developer defendants were not entitled to the certificates of occupancy for which they had applied and it was in the nature of a favor that the plaintiff agreed to issue the certificates upon the condition of the bond. The developers were eager to obtain the certificates in exchange for the bond, since they wished to give possession of apartments to their vendees. Hence, the bond was voluntarily delivered, and based on fair consideration.[2] It is customary in municipal practice for a bond to be a prerequisite to the granting of a municipal license or permit; and the requirement is generally upheld as an exercise of police power (9 McQuillin, Municipal Corporations [3d ed. rev.] § 26.69; cf. *New Jersey Bldr. Assn.* v. *Mayor of Township of East Brunswick*, 60 N. J. 222). Usually, the bond is prescribed by statute, but a municipal ordinance may also impose the requirement (7 McQuillin, Municipal Corporations [1968 rev.], § 24.556). Here, the amended resolution of the Planning Commission allowed the filing of a completion bond in lieu of completion of all of the buildings in the project in order that a certificate of occupancy for one building might be obtained. In this sense the bond possessed the attributes of a statutory bond, because it was delivered as the consequence of a valid requirement of a public body (cf. 6 N. Y. Jur., Bonds, § 29). Even assuming that the bond does not enjoy the quality of a statutory bond, it is valid as a common-law bond (*McClare* v. *Massachusetts Bonding & Ins. Co.*, 266 N. Y. 371, supra; *Clark Plastering Co.* v. *Seaboard Sur. Co.*, 237 App. Div. 274; 6 N. Y. Jur., Bonds, § 14). The sole difference between the enforceability of a statutory bond and a common-law bond lies in the amount of a recovery, as will appear in the discussion under the next question. 3. The amount recoverable under the bond. As the developer defendants failed to perform their agreement to complete the buildings in the time designated, the charge of $200 daily, not to exceed $100,000, came into play. It is not disputed that the accumulated daily charges are greater than the stipulated limit of the bond. If the bond be construed as a statutory bond, the full amount is recoverable. " Where the law imposes by statute a penalty for the doing or failure to do a particular act, it is no defense that the failure has not caused damages equal to the statutory penalty, and the wrongdoer is not the less liable for the full penalty if under the authority of law a bond is taken to secure performance " (5 Williston, Contracts [3d ed.], § 775B, p. 661; see, also, *Lyman* v. *Perlmutter*, 166 N. Y. 410; *Clark* v. *Barnard*, 108 U. S. 436; Ann. 103 A. L. R. 405). If the bond be construed as a common-law bond, the amount of the bond is equally recoverable. No proof of damages must be shown by the plaintiff where the amount of the bond represents a sum fixed as liquidated damages (cf. *Priebe & Sons* v. *United States*, 332 U. S. 407). " It is also true, especially where the rights of the public are involved, that if the nature of a breach is such that the damages are uncertain, and it is apparent that the penal sum named in a bond is a reasonable liquidation of the actual damages, recovery of the sum named may be had although the contract is in form a bond with penalty " (5 Williston, Contracts [3d ed.], § 775B, p. 665, supra; see, also, *City of Kansas City* v. *Industrial Gas Co.*, 138 Kan. 755; *Indemnity Ins. Co. of North Amer.* v. *Harrison*, 186 Ark. 590). It is apparent, in my view, that the charge of $200 daily was intended by the

---

2. The developers ratified the bond by filing a statement with the Attorney-General, representing that a completion bond was to be posted by them, in accordance with the plaintiff's condition.

parties to constitute liquidated damages, for the very reason that proof of actual damage would be difficult, if not impossible. Obedience to zoning regulations, like compliance with other laws, is an objective without monetary measurement, yet a municipality should be capable of compelling obedience by means of a monetary standard to which a licensee agrees as a condition of the enjoyment of the license. Here, the daily sum set by the parties as the liquidated damage clause is not so onerous, in light of the size of the project, nor so disproportionate to the damage which could be anticipated from a breach, in light of the legitimate interest of the plaintiff in securing the enforcement of its zoning ordinance, that it should be construed narrowly as a penalty. A per diem provision has been held not to be a penalty (cf. *Alwan* v. *Ayoub*, 35 A D 2d 1006). Moreover, in determining whether a bond calls for a penalty or liquidated damages, a provision for a reasonable sum payable for delay is commonly said to be for liquidated damages (*Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, 199 N. Y. 479; cf. *Matter of Lion Overall Co.*, 55 F. Supp. 789, affd. *sub nom. United States* v. *Walkof*, 144 F. 2d 75; *Harmony* v. *Bingham*, 12 N. Y. 99). It follows that, in my mind, there is no question of fact on this record to be determined at a trial. Since only questions of law arise, and these questions are determinable in favor of the plaintiff, summary judgment should have been directed for the plaintiff. Rabin, P. J., and Martuscello, J., concur; Shapiro, J., concurs with an opinion; Hopkins, J., dissents and votes to reverse and to grant plaintiff's motion, with an opinion, in which Munder, J., concurs. Order affirmed, with $20 costs and disbursements.